**AMYX INDUSTRIES, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 71–1526.

United States Court of Appeals, Eighth Circuit.

March 28, 1972.

Donald W. Jones, Springfield, Mo., Newton C. Brill, West Plains, Mo., Prewitt, Jones, Wilson & Karchmer, Springfield, Mo., Moore & Brill, West Plains, Mo., on brief, for petitioner.

Peter G. Nash, Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Elliott Moore and Roger C. Hartley, Attys., N. L. R. B., Washington, D. C., on brief for Labor Board.

Before GIBSON, HEANEY and ROSS, Circuit Judges.

PER CURIAM.

Petitioner seeks review of the Decision and Order of the National Labor Relations Board finding that it had discharged an employee, J. D. Hobbs, in violation of § 8 (a) (3) of the National Labor Relations Act (29 U.S.C. §§ 151 et seq.), and that this discharge constituted an unfair labor practice in violation of § 8(a) (1). The Board makes cross-application for enforcement. The Board's Decision and Order is reported at 191 N.L.R.B. No. 77. It is agreed that the unfair labor practice charge is derivative of the discriminatory discharge charge.

Employee Hobbs was employed by Amyx as leadman in the mill department of its plant which manufactured wooden dinette sets and chairs. Total employment at the plant at that time was about 55 workers. In the mill department there were about 12 workers, an assistant foreman and a foreman. Hobbs, as leadman, was the highest paid worker in the department other than the foreman and the assistant foreman. He had been promoted to leadman about one year earlier.

Hobbs was discharged on October 1, 1970, a regular plant payday. This occurred on the third day after Hobbs began soliciting support for the union in his section of the plant.

Casada, the plant manager, and Phipps, the mill department foreman, testified that Hobbs had been discharged for good cause, because his work had not been satisfactory. Phipps stated that "I have talked to J. C. [Hobbs] every day he was there in relation to his work." Phipps went on to say that you can only go so far with someone, and then you feel that you just can't get it across to them. By way of corroboration Casada testified that Hobbs had come to him claiming that Phipps was picking on him and that he (Hobbs) was tired of being leadman and requested Casada to take some kind of action. Hobbs did not deny this incident.

Early in September Phipps and Casada had discussed Hobbs' unsatisfactory performance and the final decision to terminate him was made on the 28th or 29th of September. Casada testified that this decision was made primarily by him. Casada stated that the leadman positions are training positions for those who will be foremen when the company is able to expand its operations and that Hobbs did not show promise of being able to be promoted to this more responsible position. Also of importance in making the decision to terminate Hobbs was his unsatisfactory performance which seems to have been that he spent too much time talking instead of working. Casada also stated that he did not feel that Hobbs could be demoted from the leadman position because of his temperament.

■ The Trial Examiner refused to credit the testimony that the discharges were for cause and found that Hobbs was discharged for his union activity. Amyx challenges the sufficiency of the evidence to support this finding. The Board's findings of fact are conclusive if supported by substantial evidence on the record considered as a whole. 29 U. S.C. § 160(e). Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

■ In cases such as this the General Counsel must prove that the employer had knowledge of the union activities of the discharged employee. N. L. R. B. v. Melrose Processing Co., 351 F.2d 693, 697 (8th Cir. 1965). As this court said in N. L. R. B. v. Ace Comb Co., 342 F.2d 841, 848 (8th Cir. 1965), "It is, of course, impossible for a discharge to be discriminatory without knowledge on the part of the employer of the employee's Union activities." We find that there is no substantial evidence in the record to support a finding of this knowledge on the part of the employer.

■ At the outset we note that mere coincidence in time between the employee's union activities and his discharge does not raise an inference of knowledge on the part of the employer without some direct or persuasive circumstantial evidence of knowledge. N. L. R. B. v. Falls City Creamery Co., 207 F.2d 820 (8th Cir. 1953); N. L. R. B. v. Ace Comb Co., 342 F.2d 841 (8th Cir. 1965). The Trial Examiner found that there were two different theories under which the requisite knowledge could be shown. The first was that employee Price, because of his dislike for the union and his opportunity when working with foreman Phipps, had informed the company of the union activities. The second was the small plant doctrine which allowed an inference that the employer had knowledge of the employee's activities. We consider each of these theories.

Employee Price was approached by Hobbs when Hobbs was soliciting support for the Union in his department. Price stated at that time he would quit before he would join a union as he apparently blamed a union for his discharge from some other job. The next day Price and Phipps were working together setting up a machine. Price left, approached Hobbs and asked who wanted the Union. Hobbs stated that he replied "Do you think I would tell you?" Price then went back to his machine; Phipps was still there. A meeting was

scheduled with the Union that night and Hobbs and two other Amyx Industries employees attended. The next day Price inquired about what went on at the meeting. Hobbs stated that he gave Price an evasive answer because he did not want Price to know what was going on.

█ There is evidence that Price had an opportunity to speak about the Union activity when working with Foreman Phipps in setting up the machine. There is however no evidence that he did tell the foreman anything about the Union. This falls squarely within the rule set out in *Ace Comb,* 342 F.2d at 848.

> "The Examiner made much of the fact that one of the employees who knew of [the discharged employee's] Union activities later turned out to be pro-management in the labor dispute. Such a circumstance, absent some evidence that the employee communicated his knowledge about his fellow employee to the Company, is insufficient to raise an inference of knowledge on the part of the Company."

While we agree that the activities of Price in leaving his machine where he was working with foreman Phipps, approaching Hobbs to ask him who wanted the union and then returning to the machine is suspicious conduct, however, the Board's findings may not rest on "suspicion, surmise, implications, or plainly incredible evidence" and it is the function of the court to insure that these standards are observed. Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 484, 71 S.Ct. 456, 95 L.Ed. 456 (1951). "Substantial evidence is more than a scintilla *and must do more than create a suspicion of the existence of the fact to be established,* 'It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " N. L. R. B. v. Columbian Enameling & Stamping Co., 306 U.S. 292, 300, 59 S.Ct. 501, 505, 83 L.Ed. 660 (1939). (Emphasis added). There is no such evidence here to support an inference that Price actually communicated his knowledge to the company. Phipps denied that Price told him about Hobbs' Union activities.[1]

The so-called "small plant doctrine" is of no value in this case either. The essence of the small plant doctrine is that in a small plant certain activities are likely to be noticed. As was stated by the First Circuit in N. L. R. B. v. Joseph Antell, Inc., 358 F.2d 880, 882 (1st Cir. 1966), "The smallness of the plant, or staff, may be material, but only to the extent that it may be shown to have made it likely that the employer had observed the activity in question." The Board recognizes the proper effect to give to the doctrine:

> "[T]he mere fact that Respondent's plant is of a small size, does not permit a finding that Respondent had knowledge of the union activities of specific employees, absent supporting evidence that the union activities were carried on *in such a manner, or at times that in the normal course of events, Respondent must have noticed them.*" Hadley Mfg. Co., 108 NLRB 1641, 1650 (1954) (emphasis supplied by the Board in Ralston Purina Co., 166 NLRB 566, 570 (1967).)

Hobbs' union activities consisted of going around to speak to eight other employees in his department about the union. His duties as leadman apparently would also require that he speak to these other employees during the working day. Thus there is nothing that the employer would notice in his activities that would give cause to suspect that Hobbs was carrying on union activities. Prior to any union activity Hobbs had been criticized by management employees for talking rather than working.

---

1. The General Counsel incorrectly states that "Phipps testified that he was unable to recall whether Price said anything to him about what Hobbs was doing." Phipps emphatically stated that Price did not talk to him about Hobbs trying to get the Union in on both direct and cross-examination.

The Board fails to give effect to the principle that the General Counsel has the burden of proof in this type of case; and no attempt was made to show knowledge. Phipps denied discussing the union matter at all. Price was not called as a witness. General Counsel attempts to shift the burden of proof to petitioner and was apparently content to rely on conjecture and surmise. This is not sufficient.

Enforcement of the Board's Order is denied.