[No. S007130. Dec. 28, 1989.]

GEORGE ARAKELIAN FARMS, INC., Petitioner, v.
AGRICULTURAL LABOR RELATIONS BOARD, Respondent;
UNITED FARM WORKERS OF AMERICA, AFL-CIO, Real Party
in Interest.

COUNSEL

Rynn & Janowsky and Lewis P. Janowsky for Petitioner.

Dressler & Quesenbery, Marion I. Quesenbery, Gray, Cary, Ames & Frye and Merrill F. Storms, Jr., as Amici Curiae on behalf of Petitioner.

Bernard L. Allamano, Fred A. Slimp II and Micahel D. Stump for Respondent.

Dave Stirling as Amicus Curiae on behalf of Respondent.

Lyons, Schneider, Camacho, Macri-Ortiz, Dunphy & Viarnes, Lyons, Macri-Ortiz, Schneider, Dunphy & Camacho, Silvia B. Viarnes and Dianna Lyons for Real Party in Interest.

OPINION

MOSK, J.—For the second time in four years we consider the case of petitioner George Arakelian Farms, Inc. (hereafter Arakelian). In 1985 we affirmed an order of respondent Agricultural Labor Relations Board (hereafter Board) directing Arakelian to make its employees whole for certain violations of the Agricultural Labor Relations Act. (*George Arakelian Farms, Inc.* v. *Agricultural Labor Relations Bd.* (1985) 40 Cal.3d 654 [221 Cal.Rptr. 488, 710 P.2d 288] (*Arakelian I*).) Now, because of a 1987 appellate decision that assertedly affects the presumptions and burdens of persuasion in these proceedings, Arakelian has petitioned the Board for reconsideration of its order directing make-whole relief. We granted review to determine whether the Board may reopen the case and consider vacating its order without violating our decree in *Arakelian I*. We hold that although

the Board should be extremely reluctant to reopen such proceedings after this court's order, it may nonetheless do so in a case that is not yet final when there has been an intervening change in the controlling rules of law. We conclude, however, that because there has been no relevant change in the law affecting the Board's findings in this instance, our order affirming Arakelian's make-whole obligation remains the law of the case.

In 1976 real party in interest United Farm Workers won a union representation election among Arakelian's agricultural workers. The vote was 139 for the union and 12 for "no union," with 17 ballots challenged. Arakelian filed a timely petition with the Board, objecting to the election and asking it to set aside the results. After considering and rejecting Arakelian's election challenges, the Board certified the union as the employees' exclusive bargaining representative.

■■■ ■ Although the union was certified as the employee's representative, Arakelian still asserted that the election was unfair and decided to seek judicial review of the Board's certification decision by "technically" refusing to bargain.[1] The union then brought an unfair labor practice charge, alleging that Arakelian violated Labor Code section 1153, subdivisions (a) and (e), by refusing to bargain collectively in good faith with the union.[2] ■■■■ The Board subsequently found that Arakelian's refusal to bargain was a violation of section 1153, and—consistently with its former policy of awarding make-whole relief in all cases involving a technical refusal to bargain—automatically imposed make-whole relief.[3] Arakelian then entered an appellate labyrinth and this litigation took on a life of its own.

Arakelian first petitioned for review on the ground that automatic imposition of make-whole relief in all technical-refusal cases was an abuse of the Board's discretion. While that petition was pending before the Court of

---

[1] Under the Agricultural Labor Relations Act an employer may not obtain immediate judicial review of the Board's decision certifying a union as the employees' exclusive bargaining representative. Instead, an employer that doubts the validity of the union certification can seek judicial review only by refusing to bargain with the union. If the employer is subsequently charged with and found guilty of an unfair labor practice under Labor Code section 1153, it may challenge the Board's findings in court, arguing that but for violations in the conduct of the election the union would not have been selected as the employees' bargaining representative. (*Arakelian I, supra,* 40 Cal.3d at p. 664.)

[2] Unless otherwise indicated, all statutory references hereafter are to the Labor Code.

[3] Make-whole relief is a compensatory remedy that reimburses employees for the losses they incur as a result of delays in the collective bargaining process. (*J. R. Norton Co.* v. *Agricultural Labor Relations Bd.* (1979) 26 Cal.3d 1, 36 [160 Cal.Rptr. 710, 603 P.2d 1306]. The remedy is designed to give agricultural employees the type of economic benefits they would have received if the parties had reached a timely agreement.

Appeal, we agreed with Arakelian's contention in *J. R. Norton Co.* v. *Agricultural Labor Relations Bd., supra*, 26 Cal.3d 1 (*Norton*). In that case we held that the Board could order make-whole relief in cases involving a technical refusal to bargain only when it appears from the totality of the employer's conduct that the employer went through the motions of contesting the election results as a pretense to avoid bargaining. We concluded that the Board should not order make-whole relief when the employer litigated the certification issue in good faith and with a reasonable belief that the union would not have been selected as the employees' bargaining representative had the election been conducted properly. (*Id.* at p. 39.)

Subsequent to our decision in *Norton* the Court of Appeal remanded Arakelian's case to the Board for reconsideration. On remand the Board applied the *Norton* standards and concluded that Arakelian's election challenges were not meritorious but were instead pursued with the sole intent to delay negotiations. Consequently, the Board again imposed make-whole relief. Arakelian sought judicial review of the Board's decision for a second time. The Court of Appeal granted a writ of review and remanded the case with directions to conduct a hearing on Arakelian's election challenges. On the union's petition, we granted review and reversed. (*Arakelian I.*)

In our decision we determined that Arakelian had challenged the union's certification in bad faith. After considering the circumstances under which Arakelian sought review, evaluating the substantive merit of its legal claims, and reviewing the margin of the union's victory, we concluded that Arakelian could not have entertained a reasonable, good faith belief that errors in the election would have prevented the United Farm Workers from being selected as the employees' bargaining representative. Instead, it appeared from the totality of the circumstances that Arakelian merely went through the motions of contesting the election as an elaborate pretense to avoid bargaining with the union. (*Arakelian I, supra*, 40 Cal.3d at p. 667.) In consequence, we affirmed the award of make-whole relief and ordered that "a decree issue enforcing the board's order in full." (*Id.* at p. 668.)

Unfortunately, our decision in *Arakelian I* did not end the matter. Pursuant to its regular practice, the Board remanded the case to the regional director for a determination of Arakelian's monetary obligation under the make-whole award. Before the director determined the precise amount of the employees' relief, the Court of Appeal for the Third District decided the case of *William Dal Porto & Sons, Inc.* v. *Agricultural Labor Relations Bd.* (1987) 191 Cal.App.3d 1195 [237 Cal.Rptr. 206] (*Dal Porto*). ■■■■ *Dal Porto* involved an employer's refusal to bargain with

union representatives in the context of "surface bargaining."[4] The *Dal Porto* court held that the Board may impose make-whole relief in such cases only after it determines that the parties would have reached an agreement but for the employer's unlawful refusal to bargain. According to the *Dal Porto* court, when innocent and wrongful conduct combine to prevent an agreement between the parties, make-whole relief is appropriate only if the employer's wrongful conduct was primarily responsible for the breakdown in negotiations. (*Id.* at p. 1207.)

Subsequent to the *Dal Porto* decision, the Board opted to apply the decision retroactively to pending matters involving charges of surface bargaining. However, the Board refused to apply the decision to matters involving an employer's technical refusal to bargain, reasoning that in such cases there would be no bargaining history from which it could conclude that the parties would have reached an agreement but for the employer's wrongful conduct.[5] Despite this rational determination, Arakelian nonetheless petitioned the Board to reopen the liability phase of its case and reconsider its make-whole order in light of *Dal Porto*. Arakelian offered to produce evidence of the subsequent negotiations, after the make-whole period had ended, to show that the parties would not have entered into a contract even if they had negotiated in good faith.[6] The Board refused to reopen the proceedings, and Arakelian once again sought judicial review.

The Court of Appeal granted review and determined that the Board erred in refusing to apply *Dal Porto* to pending cases involving a technical refusal to bargain. The court dismissed the union's claim that our previous decision in *Arakelian I* was res judicata, because it was convinced that Arakelian had not been given an opportunity to litigate the applicability of the *Dal Porto* "but for" test in that proceeding. The court then concluded that if the Board was authorized to impose make-whole relief even if the parties would not have consummated an agreement, the remedy would be transformed into a penalty designed to punish an employer for seeking judicial review.

---

[4] A party is guilty of surface bargaining when it merely goes through the motions of negotiating a collective bargaining agreement without any real intent to enter into a binding agreement. (See *Bertuccio* v. *Agricultural Labor Relations Bd.* (1988) 202 Cal.App.3d 1369, 1378 [249 Cal.Rptr. 473].)

[5] The Court of Appeal in *Dal Porto* recognized in dictum that its holding might not apply to technical-refusal-to-bargain cases: "At the time of a representation election negotiations have not even begun; the issues about which the parties will bargain are unknown. It would therefore doubtless be impossible to tell whether the parties would have reached agreement had they bargained." (*Dal Porto, supra,* 191 Cal.App.3d at p. 1209.)

[6] Make-whole relief compensates employees for losses incurred in the period between the time the employer first refuses to bargain until negotiations actually begin. (*Norton, supra,* 26 Cal.3d at p. 31.)

Thus, the court directed the Board to reopen the liability phase of these proceedings. We granted the union's petition for review and now reverse.

■ The United Farm Workers renews its contention that once a party has litigated its unfair labor practice claim before the Board and a reviewing court has passed on the Board's action, the preclusive effects of res judicata prevent further litigation of the issue. According to the union, our decision in *Arakelian I* was a final judgment on the merits, and even an intervening change in the law does not justify reopening the matter. The contention is unpersuasive.

*Arakelian I* affirmed the Board's order awarding make-whole relief, an order that was a product of the Board's bifurcated process for adjudicating unfair labor claims. ■ The Board divides that process into a "liability phase" and a "compliance phase"; the National Labor Relations Board (NLRB) follows the same procedure. (See *N.L.R.B.* v. *C.C.C. Associates, Inc.* (2d. Cir. 1962) 306 F.2d 534, 539.) In construing the Agricultural Labor Relations Act, of course, we are guided by applicable precedent of the NLRB. (§ 1148.)

In the liability phase, the Board issues an order adjudicating whether or not the Act has been violated, but does not determine the extent of the employer's liability. (*George Arakelian Farms, Inc.* (May 10, 1982) 8 ALRB No. 32, p. 2, fn. 2.) In the compliance phase, the Board reviews the backpay recommendation issued by the regional director and fixes the damages. The employer is afforded an opportunity to litigate all issues regarding the backpay order, and to rebut findings and submit evidence to mitigate the scope and extent of the damages. (*Ibid.*)

■ Make-whole orders, like the order issued in this case, are therefore interlocutory judgments. (*N.L.R.B.* v. *C.C.C. Associates, Inc., supra,* 306 F.2d 534, 539-540.) They are "General orders . . . [that] manifestly contemplate further administrative action on [the Board's] part . . . . Such general orders are analogous to interlocutory judgments of courts fixing liability but leaving for future determination questions as to amount of liability; and our decrees affirming or enforcing them are analogous to our affirmance of interlocutory judgments on appeal." (*Wallace Corporation* v. *National Labor Relations Bd.* (4th Cir. 1947) 159 F.2d 952, 954.)

■ The question here is whether our decision in *Arakelian I* affirming the interlocutory make-whole order precludes litigation of the *Dal Porto* issue. ■ Under the collateral estoppel or "issue preclusion" effect of res judicata, a party is barred from raising an issue of fact or law if the issue

was actually litigated and determined by a valid and final judgment in a previous proceeding, and the determination was essential to the judgment; the determination, in that instance, is conclusive in a subsequent action between the parties. (Rest.2d, Judgments, § 27.)[7]

■ While the issue of the *Dal Porto* test would have been more appropriately raised before the Board in the liability phase, or immediately thereafter on appellate review (as in *Dal Porto* itself), Arakelian is not precluded from raising it at this stage of the proceeding: the make-whole order was interlocutory, our decision in *Arakelian I* merely affirmed the interlocutory order, and Arakelian has not had an opportunity to litigate the issue. The policy underlying the doctrine of res judicata—avoiding repetitious litigation—is not implicated by reopening the proceedings in this case.

■ Moreover, while res judicata rules are generally applicable to administrative orders (*Pacific Coast Medical Enterprises* v. *Department of Benefit Payments* (1983) 140 Cal.App.3d 197, 214 [189 Cal.Rptr. 558]; *Bowen* v. *United States* (7th Cir. 1978) 570 F.2d 1311, 1322), their enforcement is more flexible in this context (*Bank of America* v. *City of Long Beach* (1975) 50 Cal.App.3d 882, 890 [124 Cal.Rptr. 256]). " 'The key to a sound solution of problems of res judicata in administrative law is recognition that the traditional principle of res judicata as developed in the judicial system should be fully applicable to some administrative action, that the principle should not be applicable to other administrative action, and that much administrative action should be subject to a qualified or relaxed set of rules concerning res judicata.' " (*Hollywood Circle, Inc.* v. *Dept. of Alchoholic Beverage Control* (1961) 55 Cal.2d 728, 732 [13 Cal.Rptr. 104, 361 P.2d 712], quoting 2 Davis, Administrative Law Treatise (1st ed. 1958) p. 568.) The bifurcated administrative process of the Board and the consequent interlocutory nature of the make-whole order affirmed in *Arakelian I* justify flexible application of res judicata in this case.

■ Lastly, the fact that the interlocutory order was sufficiently final to permit appellate review pursuant to section 1160.8 is not determinative of the res judicata issue; finality for purposes of appellate review is not the same as finality for purposes of res judicata. (Rest.2d Judgments, § 13, com. b.) Such finality is lacking, and thus the rules of res judicata do not apply, if

---

[7] "Perhaps because it rests so much on logic, res judicata is especially appropriate for a Restatement, and the American Law Institute's Restatement of Judgments (1942) has been an unusually powerful force, but it is now succeeded by a second and improved Restatement of Judgments (1982) which focuses mainly on the two subjects of 'claim preclusion' and 'issue preclusion.' The first Restatement ignored administrative res judicata, but the second Restatement usefully treats that subject in § 83 and already has significantly influenced law development." (4 Davis, Administrative Law Treatise (2d ed. 1983) pp. 78-79.)

an issue of law or fact essential to the adjudication of the claim has been reserved for future determination, or if the administrative agency has decided that one party should have relief but the amount of the damages, or the form or scope of other relief, remains to be determined. (*Ibid.*)

Accordingly, we hold that the doctrine of res judicata does not preclude the Board from reopening the proceedings to allow the parties to litigate an intervening change in the controlling rule of law.

■■ This is not to say, however, that a party may repetitively relitigate its claims until the decision of the Board becomes final in all respects. ■■ It is inherent in our system of judicial review of agency adjudication that once a court has passed on a question of law in its review of agency action, the agency cannot act inconsistently with the court's orders. (*American Farm Lines* v. *Black Ball* (1970) 397 U.S. 532, 541 [25 L.Ed.2d 547, 554, 90 S.Ct. 1288]; *Olive Proration etc. Com.* v. *Agri. etc. Com.* (1941) 17 Cal.2d 204, 209 [109 P.2d 918].) Instead, absent unusual circumstances, the decision of the reviewing court establishes the law of the case and binds the agency in all further proceedings. (*United Dredging Co.* v. *Industrial Acc. Com.* (1930) 208 Cal. 705, 713 [284 P. 922].) ■■ Like res judicata, the doctrine of the law of the case serves to promote finality of litigation by preventing a party from relitigating questions previously decided by a reviewing court. (*People* v. *Shuey* (1975) 13 Cal.3d 835, 841 [120 Cal.Rptr. 83, 533 P.2d 211].)

Nevertheless we have recognized that as a procedural rule the law of the case may operate harshly, and we have fashioned a number of exceptions to the doctrine when (1) there has been an intervening change in the law, or (2) the disputed issue was not presented or considered in the proceedings below, or (3) application of the doctrine would result in a manifest injustice. (*DiGenova* v. *State Board of Education* (1962) 57 Cal.2d 167, 179-180 [18 Cal.Rptr. 369, 367 P.2d 865].) ■■ In this case Arakelian claims that all three of these exceptions apply and permit the Board to reconsider its liability decision despite our determination in *Arakelian I*. ■■ ■■ ■■ However, we caution that the Board should not lightly presume the existence of these exceptions; before the Board is free to disregard a lawful order of this court, judicial economy demands that Arakelian demonstrate that failure to apply *Dal Porto* would be a manifest misapplication of existing legal principles and would result in substantial injustice. (See *People* v. *Shuey, supra,* 13 Cal.3d at p. 846.)[8]

---

[8] We emphasize that our decision should not be construed to imply that an administrative agency may overrule or nullify decisions of appellate courts. Instead, we affirm the obvious rule that administrative agencies may not void the judgment of an appellate court (*Laisne* v.

■■ ■■■ ■ To resolve Arakelian's contention that the Board should reopen these proceedings despite our previous decision in *Arakelian I,* it is necessary to determine whether the intervening change in the law announced by the Court of Appeal in *Dal Porto, supra,* 191 Cal.App.3d 1195, applies to cases involving a technical refusal to bargain.[9] If *Dal Porto* is applicable, then a change in the law has provided Arakelian a new defense that was previously unavailable when we considered its bad faith refusal to bargain. If, on the other hand, *Dal Porto* cannot be applied to technical-refusal cases, then reconsideration of Arakelian's substantive obligation could involve the Board in evading an order of this court in violation of the law of the case.

We are persuaded that the Board was correct when it declined to apply *Dal Porto* to cases involving a technical refusal to bargain. ■■ In issuing its interim order declining to apply *Dal Porto* to technical-refusal cases, the Board relied on its expertise and, because of its specialized knowledge, its decision is vested with a presumption of validity. (*Agricultural Labor Relations Bd.* v. *Superior Court* (1976) 16 Cal.3d 392, 411 [128 Cal.Rptr. 183, 546 P.2d 687].)

■■ A close reading of *Dal Porto* reveals that it is inappropriate to apply the decision both to surface-bargaining cases and to cases involving a technical refusal to bargain. ■■ The two unfair labor practices are factually distinguishable and require different standards for evaluating the employer's wrongful conduct. For example, to be relieved of a make-whole obligation in surface-bargaining cases, *Dal Porto* requires proof of legitimate disagreements on crucial subjects to show that the parties would not have entered into a collective bargaining agreement despite the unfair labor practice. (*Dal Porto, supra,* 191 Cal.App.3d at p. 1206.) However, in cases involving a technical refusal to bargain, an employer may avoid the make-whole remedy only if it challenged the union certification in a good faith belief that errors in the election affected the integrity of the selection process. (*Norton, supra,* 26 Cal.3d at p. 39.) If the reviewing court determines that the

*Cal. St. Bd. of Optometry* (1942) 19 Cal.2d 831, 834-835 [123 P.2d 457]), and decide only that when an *appellate court* has announced a change in the controlling rules of law, an administrative agency may appropriately apply that decision to all pending cases.

[9] Not all changes in the law justify disregarding the established law of the case. Instead, there must be a change in the *controlling* rules of law. (See, e.g., *Clemente* v. *State of California* (1985) 40 Cal.3d 202, 213 [219 Cal.Rptr. 445, 707 P.2d 818]; *Davies* v. *Krasna* (1975) 14 Cal.3d 502, 507, fn. 5 [121 Cal.Rptr. 705, 535 P.2d 1161, 79 A.L.R.3d 807]; see also Model State Administrative Procedure Act, § 5-114 (1981) which provides for reconsideration of agency action if a reviewing court determines that a relevant provision of the law was changed after the challenged action, and the changed provision may control the outcome of the proceeding.)

employer's election challenge was in fact a dilatory tactic designed to avoid bargaining, there is no opportunity to conclude, as the court did in *Dal Porto,* that innocent and wrongful conduct combined to produce legitimate disagreements on crucial issues, because the employer's unfair refusal to bargain has prevented any negotiations whatsoever.

The most significant distinction between surface-bargaining cases and those involving a technical refusal to bargain lies in the quantum of evidence available to show that both innocent and wrongful factors combined to preclude agreement. In surface-bargaining cases, the employer can produce evidence of the actual negotiations between the parties to prove that they would not have entered into a collective bargaining agreement despite the employer's wrongful conduct. In technical-refusal cases, on the other hand, the evidence that the parties would not have entered into an agreement even if they had negotiated in good faith is necessarily speculative because there is no bargaining history between the parties.[10]

 The Board has the authority to establish evidentiary standards in unfair labor practice proceedings and may appropriately bar at the threshold proffered evidence that fails to meet these standards. (See *Norton, supra,* 26 Cal.3d 1, 17.) Because the Board's findings of fact must be supported on review by substantial evidence (§ 1160.8), the Board could properly conclude that before imposing make-whole relief in technical-refusal cases, to comply with *Dal Porto* it would be forced to construct a fictional collective bargaining process by accepting speculative evidence that would not satisfy the substantial evidence requirement. (*Reese* v. *Smith* (1937) 9 Cal.2d 324, 328 [70 P.2d 933]; *Amyx Industries, Inc.* v. *N.L.R.B.* (8th Cir. 1972) 457 F.2d 904, 907 ["the Board's findings may not rest on 'suspicion, surmise, implications or plainly incredible evidence' . . . . 'Substantial evidence is more than a scintilla and must do more than create a suspicion of the existence of the fact'" (italics deleted)].) The *Dal Porto* court acknowledged that the Board would be faced with such an evidentiary dilemma in cases involving a technical refusal to bargain and declared, "Plainly the Board need not waste its time indulging speculative evidentiary wheelspinning. Wholly speculative evidence is not relevant and is properly excluded." (*Dal Porto, supra,* 191 Cal.App.3d at p. 1211.) Consequently we conclude that the Board acted properly when it refused to accept any such

---

[10]Arakelian conceded in its brief before the Court of Appeal that "it is not possible to determine whether the parties would have reached a contract at the time the employer refuses to bargain in a technical case." Indeed, Arakelian relied only on the union's subsequent wage demands to indicate that no agreement would have been consummated. The union made these demands in the parties' negotiations after the make-whole period had ended; thus the demands were irrelevant and inadmissible.

speculative evidence, limited *Dal Porto* to cases involving surface bargaining, and denied Arakelian's motion for reconsideration at the threshold.[11]

The Court of Appeal was persuaded that if make-whole relief was imposed without giving an employer the opportunity to demonstrate that the parties would not have entered into an agreement despite its wrongful conduct, the make-whole remedy would be transformed from a compensatory device into a penalty designed to punish the employer. Yet we have previously balanced the employees' need for remedial compensation against the employer's right to pursue meritorious litigation without punishment in those cases in which the employer has refused to bargain with its employees' union representatives. In *Norton, supra,* 26 Cal.3d at page 9, we adopted a test that accommodates the interests of both parties, by providing for make-whole relief only if it serves an important compensatory objective in those cases in which the employer's election challenges are merely a stalling tactic designed to thwart union organization. Once the Board or a reviewing court determines that such bad faith challenges motivated the employer's conduct, make-whole relief does not punish the employer so much as compensate the employees for the actual loss of the opportunity to negotiate an agreement. (*Id.* at p. 31.)

■ Arakelian further contends that even if *Arakelian I* remains the law of the case despite *Dal Porto,* the Board should nonetheless be permitted to reopen the case because imposition of make-whole relief at this late date would have a serious financial effect on the company. However, elementary concepts of justice require that after one has been administratively and judicially determined to be a wrongdoer he must bear the perils and consequences his own wrong has created. (*Bigelow* v. *RKO Radio Pictures* (1946) 327 U.S. 251, 265 [90 L.Ed. 652, 660-661, 66 S.Ct. 574].) Were we at this late date to determine that imposition of the make-whole remedy would be inappropriate and thereby permit the Board to reconsider its order, it is likely that Arakelian's employees would continue to suffer because of Arakelian's repetitive litigation tactics. Such a result would be inconsistent with the purposes of the Agricultural Labor Relations Act: unless litigation of the employer's position furthers the policies and purposes of the act, the employer, not the affected employees, should ultimately face the consequences of its choice to litigate the representation issues rather than bargain

---

[11] Our conclusion that *Dal Porto* is inapplicable to cases involving a technical refusal to bargain makes it unnecessary to consider Arakelian's additional contention that the law of the case was inapplicable to its petition for reconsideration, because the issue of the *Dal Porto* "but for" test was not before this court in *Arakelian I.* Arakelian did not raise the *Dal Porto* issue because in this technical-refusal-to-bargain case he manifestly could not do so.

with the employees in good faith. (*F & P Growers Assn.* v. *Agricultural Labor Relations Bd.* (1985) 168 Cal.App.3d 667, 682 [214 Cal.Rptr. 355].)

■ Finally, we perceive no injustice in upholding the Board's refusal to reopen this case, in light of the fact that any potentially relevant evidence Arakelian could introduce to show that no agreement would have been reached between the parties may yet be offered in the compliance phase of these proceedings. In cases involving a technical refusal to bargain any relevant evidence tending to show that no contract would have been consummated between the parties is more appropriately introduced in the compliance proceeding, because the question of what the parties might have agreed to concerns the amount of damages rather than the fact of damages. (See *Great Chinese Am. Sewing Co.* v. *N.L.R.B.* (9th Cir. 1978) 578 F.2d 251, 256.) Indeed, both the Board and the United Farm Workers concede as much, admitting that Arakelian is free to present evidence during the compliance stage that tends to mitigate any amount claimed to be owing as a result of the make-whole order we affirmed in *Arakelian I.*

■ One of the Legislature's purposes in enacting the Agricultural Labor Relations Act was to effect a speedy resolution of agricultural labor disputes. The shortened period of time for seeking judicial review of the Board's orders as well as the abbreviated enforcement procedures in the superior court manifest a legislative intent to avoid undue litigious delay. (*Tex-Cal Land Management, Inc.* v. *Agricultural Labor Relations Bd.* (1979) 24 Cal.3d 335, 346 [156 Cal.Rptr. 1, 595 P.2d 579].) A procedural system that encourages successive reviews by appellate courts of questions that were previously decided affects this legislative purpose and burdens the statutory rights and interests of agricultural workers, the class for whose benefit the law was adopted. (*United Dredging Co.* v. *Industrial Acc. Com., supra,* 208 Cal. 705, 714.) We recognize there are occasional instances in which, to prevent injustice, the Board may reopen a case after a decision by an appellate court because of a change in the controlling rule of law; but we again caution that such cases will arise infrequently and observe that this is not such a case.

The judgment of the Court of Appeal is reversed with directions to deny the petition of George Arakelian Farms, Inc., to review the order of respondent Agricultural Labor Relations Board, dated October 9, 1987, denying its motion to reopen the record in 6 ALRB No. 28.

Lucas, C. J., Panelli, J., and Eagleson, J., concurred.

**KENNARD, J.**—I concur in the reversal with directions. However, in my view, the Agricultural Labor Relations Board (hereafter Board) lacked

jurisdiction to reconsider our decree in *George Arakelian Farms, Inc.* v. *Agricultural Labor Relations Bd.* (1985) 40 Cal.3d 654 [221 Cal.Rptr. 488, 710 P.2d 288] (hereafter *Arakelian I*), and therefore it was not necessary for us in this case to consider the applicability of the doctrine of law of the case and any exception to it. The majority opinion fails to adequately evaluate the nature of our order in *Arakelian I* in the context of the statutory authority granted to the Board. As I shall explain, we did not remand the matter to the Board for further consideration; by a complete affirmance, we decided the issue.

In *Arakelian I,* we concluded: (1) the Board's certification of the United Farm Workers (hereafter UFW) as the exclusive representative of Arakelian's employees was valid, (2) the Board properly determined that Arakelian's refusal to bargain constituted an unfair labor practice, and (3) the Board's reimposition of make-whole relief following remand should be upheld. (40 Cal.3d at pp. 663, 668.) Our opinion, as well as its remittitur, ordered: "Let a decree issue enforcing the board's order in full." In my view, our order was a final determination of the propriety of make-whole relief as the standard to be applied in calculating the remedy for the unfair labor practice. (See *Overstreet* v. *County of Butte* (1962) 57 Cal.2d 504, 506 [20 Cal.Rptr. 631, 370 P.2d 335].) Thus, the Board did not have authority to reconsider the matter.

This case is analogous to the situation where an appellate court affirms a judgment in part and reverses it in part with directions. In that event, the terms of the remittitur define the trial court's jurisdiction. As we explained in *Hampton* v. *Superior Court* (1952) 38 Cal.2d 652, 656 [242 P.2d 1], "The order of the appellate court as stated in the remittitur, 'is decisive of the character of the judgment to which the appellant is entitled. The lower court cannot reopen the case on the facts, allow the filing of amended or supplemental pleadings, nor retry the case, and if it should do so, the judgment rendered thereon would be void.' [Citation.]" (Accord, *Rice* v. *Schmid* (1944) 25 Cal.2d 259, 263 [153 P.2d 313] [trial court lacked authority to retry any issue but damages following reversal with directions to calculate damages]; *Skaggs* v. *Los Angeles* (1956) 138 Cal.App.2d 269, 272 [291 P.2d 572] [trial court lacked authority to correct erroneous part of a judgment that had been affirmed on appeal where other portions of the judgment had been reversed with directions].)

In the cases cited in the preceding paragraph, as here, further proceedings in the matter were contemplated after the decision on appeal.[1] Our order in

---

[1] As this case illustrates, Board proceedings may involve a number of phases. Here, the certification proceeding came before the unfair labor practice proceeding, which was followed

*Arakelian I* differs from the decisions in the cited cases only because it did not reverse any part of the Board's determination. Indeed, our order in *Arakelian I* was stronger than an order of remand with directions. In *Arakelian I,* we did not remand at all; our decision on the issues presented was the equivalent of an affirmance in full.

The majority's reliance on the doctrine of law of the case fails to effectuate our order and holdings in *Arakelian I.* A review of our decision and our order in *Arakelian I* compels the conclusion that we intended to make a final decision on the issue presented. (*Puritan Leasing Co.* v. *Superior Court* (1977) 76 Cal.App.3d 140, 147 [142 Cal.Rptr. 676]; see *Lesny Development Co.* v. *Kendall* (1985) 164 Cal.App.3d 1010, 1020-1021 [210 Cal.Rptr. 890].)[2] The majority opinion implies that the Board, an adminis-

---

by a proceeding to *determine* the appropriate standard for calculating the appropriate relief, that is, the make-whole remedy determination. The proceeding to *calculate* the proper amount of relief through the process of applying the make-whole standard to the particular facts presented still needs to be concluded.

[2] The majority maintains that res judicata is "not implicated by reopening the proceedings in this case." (Maj. opn., *ante,* p. 1290.) It bases this assertion on its conclusion that Arakelian has not had an opportunity to litigate the issue, and its conclusion that *Arakelian I* was an interlocutory judgment. (*Ibid.*) I do not believe it is either necessary or appropriate to analyze this case in the context of res judicata. I also do not agree with the majority's conclusions as to res judicata.

It is true that Arakelian did not have an opportunity to *cite William Dal Porto & Sons, Inc.* v. *Agricultural Labor Relations Bd.* (1987) 191 Cal.App.3d 1195 [237 Cal.Rptr. 206] in the prior proceedings because *Dal Porto* was not decided until May 1987. However, it does not follow that Arakelian either did not or could not raise the *issue* in the prior proceeding. (See *Takahashi* v. *Board of Education* (1988) 202 Cal.App.3d 1464, 1481 [249 Cal.Rptr. 578].) "A party cannot by negligence or design withhold issues and litigate them in consecutive actions." (*Sutphin* v. *Speik* (1940) 15 Cal.2d 195, 202 [99 P.2d 652].) Arakelian did have an opportunity to litigate the issue in the prior proceeding.

I also do not agree with the majority's apparent assumption that use of the term "interlocutory" negates any need to analyze res judicata further. The infirmity in the majority's position, even assuming arguendo that *Arakelian I* is interlocutory, is illustrated by the Restatement Second of Judgments. As comment g to section 13 says: "But to hold invariably that that kind of carry-over is not to be permitted until a final judgment in the strict sense has been reached in the first action can involve hardship—either needless duplication of effort and expense in the second action to decide the same issue, or, alternatively, postponement of decision of the issue in the second action for a possibly lengthy period of time until the first action has gone to a complete finish. In particular circumstances the wisest course is to regard the prior decision of the issue as final for the purpose of issue preclusion without awaiting the end judgment. See Illustrations 1-3. Before doing so, the court should determine that the decision to be carried over was adequately deliberated and firm, even if not final in the sense of forming a basis for a judgment already entered. Thus preclusion should be refused if the decision was avowedly tentative. On the other hand, that the parties were fully heard, that the court supported its decision with a reasoned opinion, that the decision was subject to appeal or was in fact reviewed on appeal, are factors supporting the conclusion that the decision is final for the purpose of preclusion. The test of finality, however, is whether the conclusion in question is procedurally definite and not whether the court might have had doubts in reaching the decision. [¶] Application of the present Comment, like application of Comment

trative agency, may have authority to overrule or nullify decisions of this court. The judicial review and enforcement provisions of the Agricultural Labor Relations Act (Lab. Code, §§ 1160-1160.9) do not support such a grant of authority to the Board.

Board orders are not self-executing; they are dependent upon judicial review and enforcement. If a party does not seek review of a Board decision, the decision is enforced by the superior court following a petition by the Board. (Lab. Code, § 1160.8.) If review of a Board decision is sought, then the appellate court may "make and enter a decree enforcing, modifying and enforcing as so modified, or setting aside in whole or in part, the order of the board." (*Ibid.*) The Board's authority to modify or set aside its own orders expires upon the filing of the record in the court. (*Id.*, § 1160.3.) The statutory provisions contemplate court enforcement of Board decisions following judicial review, not Board review of court orders that constitute a final determination of an issue.

The facts of this case illustrate the importance of according finality to our decision in *Arakelian I* regardless of any present agreement or disagreement with the decision itself. The UFW "won" the representation election involved in this case in 1976. We decided *J. R. Norton Co.* v. *Agricultural Labor Relations Bd.* (1979) 26 Cal.3d 1 [160 Cal.Rptr. 710, 603 P.2d 1306] in 1979. In 1985, we decided *Arakelian I, supra,* 40 Cal.3d 654. In May 1987, the Court of Appeal decided *William Dal Porto & Sons, Inc.* v. *Agricultural Labor Relations Bd., supra,* 191 Cal.App.3d at page 1195. Now, in 1989, 13 years after the UFW's "victory" in the representation election, this court is prepared to reverse this case *with directions.* Because Board and court decisions will continue to be made before all of the possible proceedings in this case are finally over even at the Board level, it may be many years before the matter is ultimately resolved. How long may depend on whether the Board decides that our decree in *Arakelian I* has been nullified by an intervening change in a controlling principle of law or, perhaps, by intervening changes in law relating to election certification or

---

*f,* may result in inconsistent judgments; see § 16. [¶] Illustrations: [¶] 1. A, owner, brings an action against B, builder, for fraudulently inducing A to enter a construction contract. A moves in that action to stay arbitration of B's claim against A for payments due under the contract, contending that the arbitration clause is ineffective because it was induced by fraud. After a thorough hearing, the court grants A a preliminary injunction against arbitration. B appeals under a statute permitting review of such an interlocutory order. The appellate court reverses on the facts, finding that A failed to show that there was even a substantial issue as to fraud. If the court in a separate action by B against A to compel arbitration determines that the negative finding as to fraud in the first action was adequately deliberated and firm, that finding should be accepted as conclusive even though the first action has not reached final judgment in the strict sense." (Rest.2d Judgments, § 13, com. g., at pp. 136-137; accord, *id.*, § 83, com. a, at p. 268.)

unfair labor practices. The majority's analysis is inconsistent with one of the major legislative purposes underlying the Agricultural Labor Relations Act. It is, as demonstrated by the facts of this case, less than conducive to achieving "a speedy resolution of agricultural labor disputes." (See maj. opn., *ante*, p. 1295.)

Broussard, J., concurred.

**AGLIANO (Nat A.), J.**\*—I respectfully dissent. In my view the court misconstrues and unduly limits the controlling principle announced in *William Dal Porto & Sons, Inc.* v. *Agricultural Labor Relations Bd.* (1987) 191 Cal.App.3d 1195 [237 Cal.Rptr. 206] (hereafter *Dal Porto*).

As a consequence, the employer here and those in all future cases stemming from technical refusals to bargain, are subjected to the formidable liability of make-whole relief without a hearing on an essential element of liability, and thus, without due process.

The essence of *Dal Porto*, drawn from Labor Code section 1160.3 and fortified by federal precedent under the National Labor Relations Act, on which California law is modeled (*Dal Porto, supra,* 191 Cal.App.3d at p. 1205), is that the Agricultural Labor Relations Board (hereafter Board) may not award make-whole relief without first finding after hearing that the parties would have entered into a collective bargaining agreement providing for higher pay but for the employer's unlawful refusal to bargain. (*Ibid.*) And, because the statute requires that the loss of pay must be one "resulting from the employer's refusal to bargain," the employer's refusal to bargain must be found to have been the cause of failure to reach agreement. (*Id.*, at p. 1206.) These crucial findings, the majority decides, may here be made by a process which as I see it constitutes the application of a conclusive presumption.

The majority resolves to confine the hearing requirement of *Dal Porto* to cases of surface bargaining because those cases provide a history of negotiations from which it is possible to determine whether the parties' failure to agree resulted from legitimate disagreement as to certain crucial issues or solely from the employer's bad faith refusal to bargain. *Dal Porto* did arise from surface bargaining and the court there did discuss extensively the kind of evidence which, in that context, might be adduced to prove that no contract would have been reached. (191 Cal.App.3d at pp. 1211-1212.)

---

\* Presiding Justice, Court of Appeal, Sixth Appellate District, assigned by the Chairperson of the Judicial Council.

By no means, however, did *Dal Porto* limit its call for hearing and finding on causation to cases accompanied by a history of negotiation. Indication that *Dal Porto* contemplated the application of its new rule as well to cases arising from the employer's technical refusal to bargain is found in the court's analysis of the burden of proof issue. In concluding that the employer avoiding make-whole liability must bear the burden of establishing that a contract would not have been entered into despite its bad faith refusal to bargain, the court said: "It is obvious a contrary conclusion, placing the burden on the Board, would effectively nullify the Board's ability to impose make-whole relief in many cases and would therefore encourage employers unlawfully to refuse to bargain. *Thus, for example, make-whole relief has been awarded in cases where the employer, without reasonable cause to do so, mounts a challenge to a representation election.* [Citations.] At the time of a representation election negotiations have not even begun; the issues about which the parties will bargain are unknown. It would therefore doubtless be impossible to tell whether the parties would have reached agreement had they bargained. Understandably, the cases upholding the make-whole remedy in the context of elections have never imposed upon the Board the unenviable duty of proving a contract would have been concluded were it not for the employer's unlawful interference in the election process." (Italics added; 191 Cal.App.3d at p. 1209.)

*Dal Porto*'s implication, thus, is that the employer guilty of bad faith technical refusal to bargain is entitled, no less than his surface-bargaining counterpart, to an opportunity to prove that factors other than the employer's bad faith refusal to bargain precluded agreement for higher pay. Equally clear is the implication that a bargaining history such as may be found in surface bargaining is neither the exclusive nor necessary source of evidence that such a contract would not have been consummated. Nevertheless, the Board and now the majority assume that an employer who has refused to bargain at all could have nothing but speculative evidence to offer on the issue of causation. The result—the crucial findings of cause and liability are made without the hearing so assiduously found necessary by *Dal Porto*. The method—a conclusive presumption not justified by either logic or sound policy. (See *Dal Porto, supra,* 191 Cal.App.3d at p. 1206, fn. 7.)

Neither Labor Code section 1160.3 nor *Dal Porto* limits proof on the issue of causation to the parties' prior bargaining history, and a conclusive presumption thus cannot be justified on the ground that such evidence is unavailable. In these circumstances, application of the conclusive presumption serves only to penalize the employer for its refusal to bargain. Such punishment is impermissible since make-whole relief is a compensatory, not

a punitive, remedy. (*J. R. Norton Co.* v. *Agricultural Labor Relations Bd.* (1979) 26 Cal.3d 1, 36 [160 Cal.Rptr. 710, 603 P.2d 1306].)

The Board thus may not hold the employer liable for make-whole relief without considering on a case-by-case basis the evidence an employer might present to establish that no contract would have been consummated despite its failure to bargain in good faith. The Board's rule here does not even permit the making of an offer of proof.

I agree that the Board has greater expertise in these matters and should therefore be accorded appropriate deference. However, I fail to see how the Board's expertise rises to the level of omniscience in predicting that any evidence the employer might produce would necessarily be speculative. For example, evidence would not necessarily be speculative if it disclosed that all similarly situated employers who did bargain in good faith throughout the relevant make-whole period nevertheless could not reach agreement with the union. That fact, coupled with evidence of the nature and circumstances of the negotiations, might well convince the Board that the nonbargaining employer would likewise not have reached agreement with the union.

The majority concludes by suggesting that the employer will ultimately suffer no prejudice because it may present evidence of lack of causation at the compliance or damage phase of the proceedings. While this result is difficult to reconcile with the majority's earlier analysis of the issue, it at least affords this employer some opportunity to establish a lawful defense. However, while I share the majority's reluctance to reopen the issue of liability at this late date, the fact remains that the intervening change in law affects the issue of liability. I therefore believe the proper course for the Board to follow is to reopen that issue.