Opinion
 

 MIHARA, J.
 

 San Benito County Superior Court (hereafter the Superior Court) issued a writ of prohibition ordering the Agricultural Labor Relations Board (hereafter the ALRB) to “cease and desist any and all further attempt to impose liability on Heublein in connection with the Hat case.” The ALRB petitioned this court for a writ of mandate ordering the Superior Court to vacate its order granting the writ of prohibition. Since the ALRB’s proceedings against Heublein, Inc., were not in excess of its jurisdiction, the superior court had no authority to issue a writ of prohibition. Consequently, we grant the writ of mandate.
 

 
 *692
 
 Background
 

 In March 1989 the ALRB notified Heublein of an unfair labor practice charge against it and Michael Hat Farming Co. (Michael Hat). In February 1990, the ALRB filed a complaint against Michael Hat charging unfair labor practices. The ALRB did not proceed against Heublein at that time. In February 1991, the ALRB found that Michael Hat had engaged in unfair labor practices and ordered Michael Hat to “make whole its agricultural employees for all losses of pay and other economic losses sustained by them as the result of its refusal to bargain.” Michael Hat sought review, and the ALRB’s decision was affirmed by this court in March 1992.
 
 (Michael Hat Farming Co.
 
 v.
 
 Agricultural Labor Relations Bd.
 
 (1992) 4 Cal.App.4th 1037 [6 Cal.Rptr.2d 179].)
 

 In March 1993, the ALRB issued a “Notice of Hearing and Makewhole Specification.” The ALRB specified that “[t]he total makewhole owed by [Michael Hat] including interest from January 1, 1989 through March 31, 1993 is . . . $371,860.52.” In June 1993, Michael Hat and the ALRB entered into a settlement agreement under which Michael Hat discharged
 
 its
 
 liability for the unfair labor practices by paying $300,000. The settlement agreement specifically recited that it “releases Respondent [Michael Hat] herein only and does not preclude the ALRB from proceeding separately against any and all joint or ‘single integrated’ employers with or successor to Respondent Michael Hat, if any, on any theory of liability arising out of the facts of the above-captioned case.”
 
 [1]
 

 On September 22, 1993, the ALRB filed a “Notice of Hearing and Specification Alleging Derivative Liability.” Herein, it alleged that “Heublein operated as a joint or single integrated employer with Michael Hat during the time that the underlying unfair labor practices occurred, or, in the alternative, had a principal/agent relationship.” The ALRB claimed that Heublein “should be held jointly and severally liable for remedying the unfair labor practices of Michael Hat” and “for the outstanding makewhole and backpay, plus interest . . . .” On October 13, 1993, the ALRB gave notice to Heublein of a hearing on this matter scheduled for December 7, 1993. Heublein moved to quash the notice of hearing on the grounds that it “violates Heublein, Inc.’s fundamental right to constitutional due process and ignores the statutory and judicial authority that governs the ALRB.” On November 17, 1993, the ALRB denied Heublein’s motion.
 

 
 *693
 
 On November 19, 1993, Heublein filed a “Petition for Writ of Mandate, Prohibition or other appropriate relief’ in the Superior Court. Heublein also requested a stay of the ALRB hearing. The Superior Court granted Heublein’s request for a stay and, after briefing and argument, issued a writ of prohibition ordering the ALRB to cease and desist from any and all attempts to impose liability on Heublein in connection with the Michael Hat case. The ALRB filed a petition for writ of mandate in this court, and we issued an alternative writ to which Heublein responded.
 

 Discussion
 

 The only issue is whether Heublein was entitled to a writ of prohibition from the Superior Court. “The writ of prohibition is an appropriate remedy to arrest the proceedings of a court [or other inferior tribunal] when there is not a plain, speedy, and adequate remedy in the ordinary course of the law and when the proceedings of the court [or other inferior tribunal] are without or in excess of its jurisdiction . . . .”
 
 (City & County of S. F.
 
 v.
 
 Superior Court
 
 (1959) 53 Cal.2d 236, 243 [1 Cal.Rptr. 158, 347 P.2d 294]; Code Civ. Proc., §§ 1102, 1103.) Therefore, in this case, the Superior Court was only authorized to issue a writ of prohibition if the ALRB’s scheduled hearing on Heublein’s derivative liability for Michael Hat’s unfair labor practices was “without or in excess of” the ALRB’s jurisdiction,
 
 and
 
 Heublein had no other “plain, speedy, and adequate remedy.” (Code Civ. Proc., §§ 1102, 1103.) We conclude that the ALRB’s scheduled hearing on Heublein’s alleged derivative liability for Michael Hat’s unfair labor practice was not “without or in excess of” the ALRB’s jurisdiction, and there is no other basis upon which the Superior Court’s issuance of the writ of prohibition can be upheld.
 

 The ALRB utilizes a bifurcated process for adjudicating unfair labor practice claims. “In the liability phase, the Board issues an order adjudicating whether or not the Act has been violated, but does not determine the extent of the employer’s liability.”
 
 (George Arakelian Farms, Inc.
 
 v.
 
 Agricultural Labor Relations Bd.
 
 (1989) 49 Cal.3d 1279, 1289 [265 Cal.Rptr. 162, 783 P.2d 749]; see, generally, Cal. Code Regs., tit. 8, §§ 20220, 20260, 20262.) In the compliance phase, the scope and extent of the damages are litigated, and an appropriate remedy is imposed.
 
 (George Arakelian Farms, Inc., supra,
 
 at p. 1289; Cal. Code Regs., tit. 8, § 20290.) The National Labor Relations Board (NLRB), upon which the ALRB is modeled, uses a similar bifurcated procedure.
 
 (George Arakelian Farms, Inc., supra,
 
 at p. 1289.) The source of the ALRB’s remedial powers is Labor Code section 1160.3. This statute authorizes the ALRB to enjoin further unfair labor practices by the
 
 *694
 
 perpetrators of unfair labor practices, to award backpay
 
 “and to provide such other relief as will effectuate the policies of this part.”
 
 (Lab. Code, § 1160.3, italics added.)
 

 By legislative mandate, the Agricultural Labor Relations Act (hereafter the ALRA), of which Labor Code section 1160.3 is a part, must be construed by referring to judicial interpretations of the analogous provisions of the National Labor Relations Act (hereafter the NLRA). (Lab. Code, § 1148;
 
 Highland Ranch
 
 v.
 
 Agricultural Labor Relations Bd.
 
 (1981) 29 Cal.3d 848, 855 [176 Cal.Rptr. 753, 633 P.2d 949].) The NLRA authorizes the NLRB to enjoin further unfair labor practices by the perpetrators of unfair labor practices, to award backpay
 
 “and to take such affirmative action ... as will effectuate the policies of [the NLRA].” (29
 
 U.S.C. § 160(c), italics added.) Federal courts have long construed this language to authorize the NLRB to conduct “backpay specification” proceedings (the NLRA equivalent of ALRA compliance specification proceedings) against entities which did not participate in the perpetration of unfair labor practices and were not parties to the liability phase of the NLRB proceedings to determine if these entities are so linked to the perpetrators of the unfair labor practices that these entities and the perpetrators have a “relationship of dependence” which merits holding these entities liable for the perpetrators’ unfair labor practices.
 
 (Golden State Bottling Co.
 
 v.
 
 NLRB
 
 (1973) 414 U.S. 168, 171, fn. 2, 176, 180 [38 L.Ed.2d 388, 395, 398, 400, 94 S.Ct. 414];
 
 N.L.R.B.
 
 v.
 
 C.C.C. Associates, Inc.
 
 (2d Cir. 1962) 306 F.2d 534, 539.) Whether such a relationship exists is a question of fact which must be resolved by the NLRB in the first instance.
 
 (Regal Knitwear Co.
 
 v.
 
 Board
 
 (1945) 324 U.S. 9, 15 [89 L.Ed. 661, 667, 65 S.Ct. 478];
 
 Labor Board
 
 v.
 
 Deena Artware
 
 (1960) 361 U.S. 398, 402-404 [4 L.Ed.2d 400, 404-405, 80 S.Ct. 441].)
 

 “[I]nsofar as the language of [Labor Code] section 1160.3 does depart from the language of the comparable federal provision, it is clear that the drafters of the ALRA intended to
 
 broaden,
 
 not diminish, the ALRB’s remedial authority.”
 
 (Highland Ranch
 
 v.
 
 Agricultural Labor Relations Bd., supra, 29
 
 Cal.3d at p. 865, italics added.) Since the remedial powers granted to the NLRB by the NLRA permit the NLRB to conduct backpay specification proceedings against entities other than the perpetrator of the unfair labor practice after the completion of liability proceedings against the perpetrator, it follows that the ALRB has the power to conduct compliance specification proceedings against such entities to determine whether such entities should be required to remedy the unfair labor practice because of a
 
 *695
 
 “relationship of dependence” with the perpetrator.
 
 [2]
 
 An act is only “in excess” of jurisdiction, such that prohibition will lie, if the act “exceed[s] the defined power of a court [or other tribunal] in any instance, whether that power be defined by constitutional provisions, express statutory declaration, or rules developed by the courts and followed under the doctrine of
 
 stare
 
 decisis.”
 
 (City & County of S. F.
 
 v.
 
 Superior Court, supra,
 
 53 Cal.2d at p. 243.) In view of the broad remedial powers granted to the ALRB by the ALRA, we can only conclude that the ALRB will not exceed its defined powers by holding a compliance specification hearing for the purpose of determining whether Heublein’s relationship with Michael Hat subjected Heublein to derivative liability for Michael Hat’s unfair labor practices.
 

 Notwithstanding the fact that the ALRB’s scheduled hearing was within its jurisdiction, Heublein asserts that the Superior Court was entitled to arrest the scheduled ALRB proceedings because these proceedings “would have denied Heublein any opportunity to defend itself on the merits of the unfair labor practice claim.” “[A] basic prerequisite to judicial review of administrative acts is the existence of a ripe controversy.”
 
 (Pacific Legal Foundation
 
 v.
 
 California Coastal Com.
 
 (1982) 33 Cal.3d 158, 169 [188 Cal.Rptr. 104, 655 P.2d 306].) “ ‘Without undertaking to survey the intricacies of the ripeness doctrine[,] it is fair to say that its basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also
 
 to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.’ ” (Id.
 
 at p. 171 quoting
 
 Abbott Laboratories
 
 v.
 
 Gardner
 
 (1967) 387 U.S. 136, 148-149 [18 L.Ed.2d 681, 691-692, 87 S.Ct. 1507], italics added.)
 

 The ALRB has not made any decision regarding Heublein’s derivative liability for Michael Hat’s unfair labor practice nor has it yet held any proceedings directed towards making such a determination. Nevertheless, Heublein asserts that “the Superior Court concluded that the derivative liability proceeding violated Heublein’s right to due process.” Even if such a finding could be implied from the Superior Court’s order, it cannot be upheld. The Superior Court could not have concluded that Heublein
 
 had been
 
 denied due process by “the derivative liability proceeding” because no such proceeding had yet occurred. The essence of a due process claim is that the State has deprived an individual of “life, liberty or property, without due process of law.” (U.S. Const., Amend. XIV.) Because Heublein sought relief
 
 *696
 
 in the Superior Court
 
 before
 
 any derivative liability proceedings had been held, the ALRB had not yet taken any action to deprive Heublein of “life, liberty or property.” In the absence of such action, the Superior Court could not have concluded that Heublein’s right to due process of law had been violated.
 

 Still, Heublein contends that the Superior Court was entitled to act to prevent a
 
 potential
 
 denial of due process at the scheduled hearing because permitting the hearing to go forward would subject Heublein to “further vexation and useless expense.” We disagree. Courts are not entitled to enjoin the holding of administrative proceedings based on a party’s assertion “that the charge on which the complaint rests is groundless and that the mere holding of the prescribed administrative hearing would result in irreparable damage. Lawsuits also often prove to have been groundless; but no way has been discovered of relieving a defendant from the necessity of a trial to establish the fact.”
 
 (Myers
 
 v.
 
 Bethlehem Corp.
 
 (1938) 303 U.S. 41, 50-52 [82 L.Ed. 638, 643-645, 58 S.Ct. 4592], fn. omitted.) Whether Heublein should be held liable for Michael Hat’s unfair labor practices is precisely the question of fact which the ALRB seeks to resolve at its scheduled hearing. The ALRB has jurisdiction to resolve this issue in the first instance, and the Legislature has provided an adequate avenue of appellate review. Any controversy over what process is due Heublein in these proceedings must be resolved in one of these forums. The Superior Court has no role to play in making this determination or in reviewing it. Consequently, the Superior Court should have denied Heublein’s petition for a writ of prohibition.
 

 Disposition
 

 Let a peremptory writ of mandate issue directing the Superior Court to vacate its order issuing a writ of prohibition and to enter a new order dissolving its stay and denying Heublein’s petition for a writ of prohibition. Petitioner shall recover its costs as prevailing party.
 

 Premo, Acting P. J., and Wunderlich, J., concurred.
 

 A petition for a rehearing was denied November 15, 1994.
 

 [1]
 

 Since the settlement agreement released
 
 only
 
 Michael Hat and did not fully satisfy the makewhole specification, we reject Heublein’s claim that the settlement agreement bars the ALRB from proceeding against it.
 

 [2]
 

 This disposes of Heublein’s claim that the ALRB cannot proceed against it now because the ALRB has already held liability proceedings in which Heublein was not included.