Filed 1/8/21 Dierenfield v. Wells Fargo Bank CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| DENNIS DIERENFIELD et al., | D076592 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2016-00037839-CU-BC-CTL ) |
| WELLS FARGO BANK, N.A., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, John S. Meyer, Judge. Affirmed.

Catanzarite Law Corporation, Kenneth J. Catanzarite, Eric V. Anderton and Tim James O'Keefe for Plaintiffs and Appellants.

Allen Matkins Leck Gamble Mallory & Natsis, Marissa M. Dennis, Abby L. Bloetscher and Timothy M. Hutter for Defendant and Respondent.

The appellants in the instant matter are well known to this court. This is the third appeal before us involving Dennis Dierenfield, William Gilmer, Tye Wynfield, and NNN 1818 Market Street 13, LLC (LLC 13) (Dierenfield, Gilmer, Wynfield collectively Individual Appellants; Individual Appellants and LLC 13 collectively Appellants) regarding a failed real estate deal in

Pennsylvania. In the first appeal, Appellants challenged the superior court's order granting Wells Fargo, N.A.'s (Wells Fargo) motion to dismiss for forum non conveniens. We reversed that order, remanding the matter back to the superior court with instructions to reconsider Wells Fargo's motion. (See *Dierenfield v. Wells Fargo Bank, N.A.* (Mar. 22, 2018, D072189) [nonpub. opn.] (*Dierenfield I*).)

In the second appeal, Appellants challenged a judgment in favor of Commonwealth Land Title Company, Commonwealth Land Title Insurance Company, and Ticor Title Compony of California (collectively Escrow Defendants) following the Escrow Defendants' successful demurrer to the first amended complaint. We affirmed the judgment, agreeing with the superior court that Appellants' claims against the Escrow Defendants were time barred and concluding that Appellants could not cure any defects by amending the operative complaint. (See *Dierenfield v. Commonwealth Land Title Co.* (Aug. 31, 2018, D072541) [nonpub. opn.], review denied Nov. 20, 2018, S251883 (*Dierenfield II*).)[1]

Not surprisingly, after we returned the remittitur in *Dierenfield I*, Wells Fargo demurred to the first amended complaint, also asserting that the causes of action alleged against it were barred by the statute of limitations. The superior court agreed and sustained the demurrer without leave to amend. In doing so, the court explained that it must follow *Dierenfield II* as the "law of the case."

---

[1] An unpublished opinion may be relied on "[w]hen the opinion is relevant under the doctrines of law of the case, res judicata, or collateral estoppel." (Cal. Rules of Court, rule 8.1115(b)(1); see *K.G. v. Meredith* (2012) 204 Cal.App.4th 164, 172, fn. 9 [an unpublished opinion may be cited "to explain the factual background of the case"].)

2

Appellants appeal the ensuing judgment, arguing not that the first amended complaint should have survived Wells Fargo's demurrer, but that the superior court erred in failing to consider the allegations of Appellants' proposed second amended complaint. To this end, Appellants argue that the superior court abused its discretion in declining to allow them to amend their complaint. We reject this contention and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

*Relevant Allegations in the First Amended Complaint*[2]

The instant dispute arises out of the purchase of a one million square foot office property located at 1818 Market Street in Philadelphia (the Property). NNN 1818 Market Street, LLC (the Company) purchased the Property from NNN 1818 Market-VEF II, LLC (VEF). The Company then sold fractional tenants-in-common interests to purchasers. Individual purchasers could obtain an interest in the Property in two ways: (1) they could purchase a fractional tenant-in-common interest that was then to be assigned to a special purpose entity at the close of escrow; or (2) they could purchase membership units in a limited liability company that had acquired an interest in the Property.

Dierenfield and Gilmer each purchased a fractional, tenants-in-common interest from the Company. Gilmer alleged he was required to hold his interest in LLC 13. Dierenfield held his interest in the Property through another special purpose entity, NNN 1818 Market Street 17, LLC (LLC 17).

---

[2]    We briefly set forth the salient facts from the first amended complaint to provide some context to the dispute between the parties. That said, Appellants do not claim the allegations in the first amended complaint were sufficient to survive demurrer. Therefore, we eschew a detailed discussion of those allegations.

Wynfield purchased membership units in the Company and acquired an interest in the Property through his membership in that entity.

The Individual Appellants claim that they decided to purchase interests in the Property or a membership unit based on certain representations regarding the total amount of debt that would encumber the Property. Specifically, Appellants contend the Property would be purchased subject to a total agreed upon debt of $132 million evidenced by two promissory notes (one in the amount of $122 million and the other in the amount of $10 million) secured by mortgages payable to and in favor of Wells Fargo.[3] These two promissory notes, together, constituted the agreed upon $132 million acquisition loans and mortgages.

However, Wells Fargo allegedly over encumbered the Property with an additional promissory note in the amount of $9,630,000 and a corresponding mortgage (Loan 3). Appellants did not agree to and did not know about Loan 3. Wells Fargo knew that the undisclosed Loan 3 and corresponding agreement were not authorized or agreed to by the Individual Appellants or any of the special purpose entities, like LLC 13 and LLC 17. Had the Individual Appellants known about Loan 3, they would not have agreed to purchase a fractional tenant-in-common interest in the Property or a membership unit in the Company.

Appellants allege that the loan proceeds from Loan 3 were used by other defendants to pay kickbacks and make untoward payments, further harming Appellants' interests and damaging them.

---

[3] The mortgages were originally in favor of Wachovia Bank, but were subsequently assigned to Wells Fargo.

As to Wells Fargo, based on Loan 3, Appellants alleged three causes of action in the first amended complaint: breach of mortgage agreement, aiding and abetting breach of fiduciary duty, and unfair business practices.

Appellants further alleged that they "did not know facts that would have caused a reasonable person to suspect and did not discover, nor would a reasonable and diligent investigation have disclosed, that . . . the unauthorized $9,6390,000" existed. It is the origination of Loan 3 on which all the claims against Wells Fargo rely. Further, Appellants allege they were put on notice of the possible claims against Wells Fargo no sooner than October 31, 2014.

*Wells Fargo's Demurrer to the First Amended Complaint*

On January 8, 2019, Wells Fargo filed a demurrer to the three causes of action alleged against it in the first amended complaint. Wells Fargo argued that the causes of action were barred by the statute of limitations, and this court's opinion in *Dierenfield II* precluded Appellants from amending the complaint to add new facts to invoke the delayed discovery doctrine.

The day before the superior court considered Wells Fargo's demurrer, Appellants filed a motion for leave to file a second amended complaint. In that motion, Appellants proposed to abandon the three causes of action alleged against Wells Fargo in the first amended complaint and replace them with three new causes of action: negligence, intentional interference with contractual relations, and restitution. However, the new causes of action were based on the same alleged wrong by Wells Fargo that was the basis of Appellants' claims in the first amended complaint— the origination of Loan 3.

At the demurrer hearing the next day, the superior court sustained Wells Fargo's demurrer without leave to amend. In the ensuing minute

5

order, the superior court observed that Appellants "purchased their interests in the subject property in February 2006. Plaintiffs did not file their initial complaint until October 2016, or more than 10 years after they purchased their interests." Noting that the longest statute of limitations for any of the claims against Wells Fargo was four years, the court stated that Appellants "rely on the delayed discovery doctrine to postpone the accrual of the statute of limitations." The court then concluded that our decision in *Dierenfield II* precluded Appellants from arguing that the delayed discovery doctrine applied because "[t]his is the law of the case." Thus, the superior court explained, "Inasmuch as [this appellate court in *Dierenfield II*] concluded that there are insufficient facts alleged in the same First Amended Complaint as a matter of law to invoke the delayed discovery doctrine, this Court cannot ignore that conclusion." The court then found that all three of the causes of action in the first amended complaint against Wells Fargo were time barred.

The court also considered whether Appellants should be permitted to file a second amended complaint with new causes of action against Wells Fargo. The court determined that Appellants failed to explain how any of these causes of action could survive the statute of limitations while noting that the claims appeared to be based on the same wrongdoing by Wells Fargo as was alleged in the first amended complaint.

Appellants timely appealed.

DISCUSSION

Generally, "[o]n appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled. We give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] Further, we treat the

6

demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions or conclusions of law. [Citations.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.]" (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865.) However, in the instant action, Appellants do not claim that the first amended complaint should have survived demurrer. Instead, they focus on the allegations of their proposed second amended complaint and assert the court erred by not considering their new allegations. In this sense, Appellants are actually contending the superior court abused its discretion in denying them the opportunity to file an amended complaint. (See *ibid.* ["[W]hen [a demurrer] is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse. [Citation.]".)

Here, Appellants' primary argument is the superior court improperly applied the law of the case doctrine to sustain Wells Fargo's demurrer without leave to amend. Specifically, they insist Wells Fargo cannot invoke the law of the case doctrine because they were not parties to the *Dierenfield II* appeal. Then they maintain that because the superior court did not consider Appellants' new causes of action in the proposed second amended complaint, there was no ruling assessing the sufficiency of the discovery allegations and fraudulent concealment allegations in that proposed complaint. We reject Appellants' contention that the law of the case doctrine does not apply to Wells Fargo. As we will discuss, Appellants rely on the same wrongdoing (the origination of Loan 3) to give rise to their claims against Wells Fargo that we found insufficient as a matter of law in *Dierenfield II*. As such, we see no reason why that legal finding should not be

7

applied to the claims against Wells Fargo based on the same allegations. Indeed, it would be unjust and border on absurd to conclude the statute of limitations bars causes of action against the Escrow Defendants but not against Wells Fargo when the exact same conduct and allegations form the basis of the claims against Wells Fargo.

"The law of the case doctrine states that when, in deciding an appeal, an appellate court 'states in its opinion a principle or rule of law necessary to the decision, that principle or rule becomes the law of the case and must be adhered to throughout its subsequent progress, both in the lower court and upon subsequent appeal . . . , and this although in its subsequent consideration this court may be clearly of the opinion that the former decision is erroneous in that particular.' [Citations.]" (*Kowis v. Howard* (1992) 3 Cal.4th 888, 892-893, fn. omitted (*Kowis*); see *Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 701 ["The doctrine of law of the case applies to later proceedings in the same case. [Citation.]"] (*Griset*).) Thus, the law-of-the-case doctrine "prevents the parties from seeking appellate reconsideration of an already decided issue in the same case absent some significant change in circumstances." (*People v. Whitt* (1990) 51 Cal.3d 620, 638 (*Whitt*).)

The law of the case doctrine may apply even where the appeal is from a decision "short of a full trial, including a judgment on a demurrer, a nonsuit order or [other] motion." (*Hotels Nevada, LLC v. L.A. Pacific Center, Inc.* (2012) 203 Cal.App.4th 336, 356.) "[I]t has long been held that sufficiency of pleadings is an issue subject to foreclosure by law of the case. [Citation.]" (*People v. Shuey* (1975) 13 Cal.3d 835, 843.) "Like res judicata, the doctrine of the law of the case serves to promote finality of litigation by preventing a party from relitigating questions previously decided by a reviewing court."

(*George Arakelian Farms, Inc. v. Agricultural Labor Relations Board* (1989) 49 Cal.3d 1279, 1291.) "From a policy standpoint it is not difficult to envisage the frustrating consequences that could flow from a practice allowing different panels of the Court of Appeal to redetermine issues which were disposed of on a previous appeal in the same case." (*Shuey*, at p. 840.)

To apply the law of the case doctrine, we must review and interpret our earlier opinion for the principle or rule it established, recognizing that we must interpret that rule within its context. " ' "[L]anguage contained in a judicial opinion is ' "to be understood in the light of the facts and issue then before the court, and an opinion is not authority for a proposition not therein considered. [Citation.]" ' [Citations.]" [Citation.] When questions about an opinion's import arise, the opinion "should receive a reasonable interpretation [citation] and an interpretation which reflects the circumstances under which it was rendered [citation]" [citation], and its statements should be considered in context [citation].' [Citation.]" (*Hedwall v. PCMV, LLC* (2018) 22 Cal.App.5th 564, 577, fn. 7.)

In the first amended complaint, Appellants alleged the origin of the Loan 3 gave rise to multiple causes of action against the Escrow Defendants as well as all three causes of action alleged against Wells Fargo. Although Wells Fargo was not a party to the appeal in *Dierenfield II*, we explicitly addressed Appellants' allegations of wrongdoing based on the origination of Loan 3 and the discovery of same in our opinion in that case.

In the first amended complaint, Appellants alleged that it was not until October 31, 2014, when they discovered facts that put them on notice of the alleged wrongdoing by defendants (including Wells Fargo) involving the existence of Loan 3. (See *Dierenfield II*, *supra*, D072541.)

9

In regard to Appellants' allegations of the discovery of Loan 3, we observed:

> "Finally, plaintiffs contend[] defendants engaged in wrongdoing by '*secretly* encumber[ing] the Property with an additional undisclosed $9,630,000 unauthorized mortgage and loan[,] which funds were combined to increase debt to $141,630,000 in breach of the escrow instructions including the payment of kickbacks.' (FAC ¶¶ 3, 65, italics added.) Plaintiffs further allege the 'TIC Closing Statement *fraudulently concealed* . . . the existence of the $9,630,000 Loan 3 and Mortgage 3 security,' until they discovered this wrongdoing on October 31, 2014. (FAC, ¶ 64(b), italics added.)" (*Dierenfield II*, *supra*, D072541.)

We then concluded these allegations that defendants "secretly" and "fraudulently concealed" the existence of the Loan 3 and paid "kickbacks" are mere "contentions, deductions, conclusions of fact or law" (see *Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 924), devoid of material facts, and thus insufficient as a matter of law to invoke the delayed discovery doctrine.[4] (See *Dierenfield II*, *supra*, D072541.)

We further explained that these conclusory allegations conflicted with multiple provisions in the Company's Confidential Private Placement Memorandum (PPM) dated December 16, 2005 and its addendum, which was exhibit 1 to the request for judicial notice. (See *Intengan v. BAC Home Loans Servicing LP* (2013) 214 Cal.App.4th 1047, 1055 [for purposes of a demurrer, a court may disregard conclusory allegations in a complaint that contradict judicially noticed facts].) (See *Dierenfield II*, *supra*, D072541.) Specifically, the PPM disclosed to potential investors the need to obtain additional

---

[4] Under the delayed discovery doctrine, accrual of a cause of action is postponed until the plaintiff discovers, or has reason to discover, the cause of action. (*Norgat v. Upjohn Co.* (1999) 21 Cal.4th 383, 397.)

financing to acquire the Property if the minimum offering was not met. The PPM explicitly stated that the additional financing could take the form of a bridge loan or a capital contribution. (See *Dierenfield II*, *supra*, D072541.) Also, the PPM informed Appellants that the Company's manager had the sole discretion to obtain a short term-acquisition loan that the tenants in common would be required to refinance at the end of the relatively short term. (See *Dierenfield II*, *supra*, D072541.)

The PPM additionally disclosed that the Company's manager could obtain "mezzanine financing" at its sole discretion if there was a funding shortfall. And the PPM explained that such mezzanine financing could be obtained from a bank or other financial institution. (See *Dierenfield II*, *supra*, D072541.)

Based on the PPM, we concluded that, despite Appellants' conclusory allegations to the contrary, the record "unambiguously" showed Appellants in 2006 were repeatedly warned that the Company could, in its sole discretion, obtain additional financing to acquire the subject property if the minimum financing was not met, which turned out to be the case. Also, Appellants were repeatedly warned that if the Company obtained such financing, it potentially would increase the initial loan to value ratio. Based on the record before us in *Dierenfield II*, we therefore concluded "as a matter of law that [Appellants] were on notice of these risks when they invested in the subject property in 2006 and that the delayed discovery doctrine d[id] not apply to toll the limitation[-] periods in connection with this particular alleged wrongdoing." (*Dierenfield II*, *supra*, D072541.) And because of this notice of the risk to Appellants, we determined, as a matter of law,

11

that the statute of limitations had run on the causes of action based on the origination of Loan 3 and Appellants could not cure the defect by amendment. (*Dierenfield II*, *supra*, D072541.)

From our review of *Dierenfield II*, it is clear that we determined, as a matter of law, that Appellants could not amend their pleadings to apply the delayed discovery doctrine regarding several causes of actions, some of which depended on the origination of Loan 3. Put differently, the determination that the delayed discovery doctrine did not apply to causes of action dependent on the origination of Loan 3 was necessary to our prior decision and was " ' "actually presented and determined by the court" ' " in *Dierenfield II*. (See *People v. Gray* (2005) 37 Cal.4th 168, 196-197.)

Here, Appellants do not dispute that the allegations in the first amended complaint regarding Loan 3, which gave rise to the causes of action against the Escrow Defendants, are the exact same as to the three causes of action against Wells Fargo. They do not claim they did not have the opportunity during their appeal in *Dierenfield II* to provide additional allegations to show they could properly plead delayed discovery or otherwise allege that the statute of limitations had not run on their causes of action based on the origination of Loan 3. Nevertheless, they ask us to ignore our determination in *Dierenfield II* that the causes of action based on the origination of Loan 3 are time barred simply because Wells Fargo was not a party in *Dierenfield II*. We decline to so limit the law of the case doctrine based on the record before us.

Wells Fargo could not have filed a demurrer along with the Escrow Defendants. The superior court granted Wells Fargo's motion to dismiss for forum non conveniens on February 17, 2017. Appellants appealed that order,

12

and we reversed the order in *Dierenfield I.* We did not issue remittitur in that case until May 22, 2018. Meanwhile, Appellants filed the first amended complaint on February 24, 2017. At that point, Wells Fargo was "out of the case" because the court had granted Wells Fargo's motion to dismiss, and the subject order was being appealed. While *Dierenfield I* was pending in this court, the Escrow Defendants filed their demurrers to the first amended complaint. The superior court sustained those demurrers without leave to amend on April 21, 2017. Wells Fargo had no opportunity to file a demurrer or otherwise participate in *Dierenfield II* while *Dierenfield I* was pending before this court. As such, the fact that Wells Fargo was not a party to the appeal in *Dierenfield II* is not of the moment, especially because the allegations at issue in *Dierenfield II* and the instant matter are exactly the same.

Perhaps, the law of the case doctrine would not be applicable to Appellants' claims against Wells Fargo in the first amended complaint if any of those claims had a statute of limitations that rendered the delayed discovery doctrine unnecessary. That said, Appellants make no such argument, and it is clear that none of the causes of action alleged against Wells Fargo in the first amended complaint have a statute of limitations that would not have expired in the 10 years between the origination of Loan 3 and the filing of the instant action.[5]

---

[5] A breach of contract cause of action has a four-year statute of limitations. (See Code Civ. Proc., § 337, subd. (a).) The statute of limitations for a claim of aiding and abetting breach of fiduciary duty is no longer than four years (three years where the gravamen of the complaint is deceit). (See *Fuller v. First Franklin Financial Corp.* (2013) 216 Cal.App.4th 955, 963; *William L. Lyon & Associates, Inc. v. Superior Court* (2012) 204 Cal.App.4th 1294, 1312.) An unfair business practices claim has a four-year statute of limitations. (See Bus. & Prof. Code, § 17208.)

We also are not persuaded by Appellants' argument that the law of the case doctrine cannot apply to the second amended complaint because "there is no ruling assessing the sufficiency of the discovery allegations and fraudulent concealment allegations in" that proposed complaint.  By way of these new allegations, Appellants seek to explain why they did not discover or have reason to investigate the existence of Loan 3 before October 31, 2014. However, in *Dierenfield II*, we already determined, as a matter of law, that Appellants could not allege any additional facts to plead around the expiration of the statute of limitations for a cause of action dependent on the origination of Loan 3.  If Appellants could have alleged additional facts bearing on the delayed discovery of Loan 3, they should have raised it in *Dierenfield II*, not nearly two years after we issued our opinion in that case. Indeed, Appellants' argument here directly undermines the purpose of the law of the case doctrine as they are attempting to relitigate an issue we previously decided.  (See *George Arakelian Farms, Inc. v. Agricultural Labor Relations Board*, *supra*, 49 Cal.3d at p. 1291.)  Therefore, absent a significant change in circumstance, the law of the case doctrine prohibits Appellants from seeking appellate reconsideration of an already-decided issue.  (See *Whitt*, *supra*, 51 Cal.3d at p. 638.)

Here, Appellants do not point to any significant change of circumstance that would cause the law of the case doctrine not to apply.  Their three new causes of action depend on the same untoward conduct- the origination of Loan 3.  The new allegations simply provide an additional explanation why Appellants could not have known about Loan 3 until October 31, 2014. Appellants do not explain why they waited almost two years after *Dierenfield II* to make these new allegations.  Moreover, they do not illuminate why they did not offer these allegations in their former appeal.

14

Additionally, none of the new causes of action have a statute of limitations that is longer than any of the causes of action alleged against Wells Fargo in the first amended complaint.[6]

In short, on the record before us, we cannot say the superior court abused its discretion in denying Appellants an opportunity to file a second amended complaint adding new allegations that Appellants had no reason to be aware of Loan 3 until October 31, 2014. In *Dierenfield II*, we determined as a matter of law that causes of action dependent on the origination of Loan 3 were time barred. The allegations we found lacking in *Dierenfield II* are exactly the same as those relied on by Appellants here. And Appellants had the opportunity to allege additional facts, if they could, in *Dierenfield II*. Under the law of the case doctrine, they do not get to relitigate an issue we already decided in this case. (See *Kowis*, *supra*, 3 Cal.4th at pp. 892-893; *Griset*, *supra*, 25 Cal.4th at p. 701.)

---

[6] A claim of negligence against a mortgage lender has a statute of limitations of two years. (See *Cyr v. McGovran* (2012) 206 Cal.App.4th 645, 651.) In general, a cause of action for intentional interference with contract is governed by a two-year statute of limitations. (Code Civ. Proc., § 339, subd. (1); *Trembath v. Digardi* (1974) 43 Cal.App.3d 834, 836.) Putting aside whether restitution is a stand-alone cause of action (compare *McBride v. Boughton* (2004) 123 Cal.App.4th 379, 387 with *Dunkin v. Boskey* (2000) 82 Cal.App.4th 171, 197), the applicable statute of limitations is based on the underlying wrong (see *Federal Deposit Ins. Corp. v. Dintino* (2008) 167 Cal.App.4th 333, 347-348). The wrong here is negligence of intentional interference with contract; thus, Appellants' claim of restitution would have a two-year statute of limitations.

## DISPOSITION

The judgment is affirmed. Wells Fargo is entitled to its costs on appeal.

HUFFMAN, Acting P. J.

WE CONCUR:

HALLER, J.

O'ROURKE, J.

16