Filed 12/15/25

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO


PRIME HEALTHCARE
MANAGEMENT, INC., et al.,

       Petitioner,

v.

THE SUPERIOR COURT OF
SAN BERNARDINO COUNTY,

       Respondent;

ELENI GAVRIILOGLOU,

       Real Party in Interest.

E085200

(Super.Ct.No. CIVDS1709515)

OPINION


ORIGINAL PROCEEDINGS; petition for extraordinary writ. Donald R. Alvarez, Judge. Petition denied.

Morgan, Lewis & Bockius, Jennifer B. Zargarof, Samson C. Huang, Joseph Bias and Thomas M. Peterson for Petitioner.

No appearance for Respondent.

The Law Offices of Gavril T. Gabriel, Gavril T. Gabriel, Athina Kotsia, Nikolaos Kefallonitis and Sherri Davoodifard for Real Party in Interest.

Setareh Law Group, Shaun Setareh and Thomas Segal as Amicus Curiae on behalf of Real Party in Interest.

Eleni Gavriiloglou brought this action against her former employer, Prime Healthcare Management, Inc. (Prime Health) and its alleged alter egos, asserting, among other things, (1) individual claims based on Labor Code violations and (2) individual and representative claims for civil penalties for Labor Code violations under the Labor Code Private Attorneys General Act of 2004 (PAGA; Lab. Code, § 2698 et seq.).[1]  Pursuant to an arbitration agreement, all non-PAGA Labor Code claims were arbitrated, and the PAGA claim (both the individual and representative claims) were stayed.  The arbitrator found in favor of Prime Health on all the alleged Labor Code violations and the trial court confirmed the award and granted judgment on the pleadings against Gavriiloglou on her PAGA claim, ruling that the arbitrator's findings established that she was not an "aggrieved employee" within the meaning of PAGA and therefore she lacked standing to bring a PAGA claim.

Gavriiloglou appealed, and in that proceeding, we affirmed the denial of her petition to vacate the arbitration award but reversed the ruling that the arbitration award barred her PAGA claim.  (*Gavriiloglou v. Prime Healthcare Management, Inc.* (2022) 83 Cal.App.5th 595, 599, 607 review denied Jan. 11, 2023, S277080 (*Gavriiloglou*).)  Subsequently, Prime Health filed a renewed motion for judgment on the pleadings arguing that since the date of our opinion, two other courts of appeal have disagreed with

---

[1] All further statutory references are to the Labor Code unless otherwise specified.

our holding (see *Rocha v. U-Haul Co. of California* (2023) 88 Cal.App.5th 65, 79–82 (*Rocha*), and *Rodriguez v. Lawrence Equipment, Inc*. (2024) 106 Cal.App.5th 645, 657–658 (*Rodriguez*)), and that the Supreme Court had established that *Gavriiloglou* was wrongly decided in *Adolph v. Uber Technologies, Inc.* (2023) 14 Cal.5th 1104, 1124 (*Adolph*), although the *Adolph* decision, which was filed well after *Gavriiloglou*, did not mention it.

The trial court denied the renewed motion for judgment on the pleadings on the ground that our prior opinion in *Gavriiloglou*, *supra*, 83 Cal.App.5th 595 was law of the case, and Prime Health filed this petition for extraordinary relief.  In its petition, Prime Health argues the law of the case doctrine was erroneously applied because *Adolph*, *supra*, 14 Cal.5th 1104 constitutes intervening controlling law and that the trial court erred in failing to follow the "controlling" decisions of courts having superior jurisdiction.  We deny the petition.

**BACKGROUND**

On May 22, 2017, Gavriiloglou filed a complaint, asserting causes of action against Prime Health Hospital Business Services, Inc., and Dr. Prem Reddy (collectively Prime Health) for:  failure to provide meal and rest periods (§ 226.7), count 1; failure to pay overtime (§ 510), count 2; failure to provide all wages due at termination (§ 201), count 3; waiting time penalties (§ 203), count 4; failure to produce an employee file (§ 1198.5), count 5; misclassification as exempt (§ 515), count 6; discrimination, harassment, and retaliation, count 7; failure to prevent discrimination, harassment, and retaliation, count 8; failure to provide reasonable accommodation, count 9; failure to

3

engage in the good faith interactive process to determine effective reasonable accommodation, count 10; retaliation (§ 1102.5), count 11; wrongful termination in violation of public policy, count 12; wrongful termination in violation of Government Code section 12900, count 13; PAGA claim for penalties (§ 2698 et seq.), count 14; unfair business practices (Bus. & Prof. Code, § 17200), count 15.

Because Gavriiloglou had signed an arbitration agreement as a condition of her employment, Prime Health filed a motion to compel arbitration of all Gavriiloglou's non-PAGA claims and to stay the litigation of Gavriiloglou's PAGA claim (in both her individual and representative capacities), which was granted. At the conclusion of the arbitration hearing, the arbitrator issued a final award in the favor of Prime Health, in which the arbitrator found that the alleged Labor Code violations did not occur.

Gavriiloglou filed a motion to vacate the arbitration award, which was denied. "Prime [Health] then filed a motion for judgment on the pleadings on the PAGA claim. It argued that the arbitrator's ruling against Gavriiloglou on her Labor Code claims established, as a matter of issue preclusion, that she was not an 'aggrieved employee' ([§ 2699, subd. (a)]) and therefore she lacked standing to bring a PAGA claim. The trial court granted judgment on the pleadings, without leave to amend. Accordingly, it entered judgment against Gavriiloglou and in favor of Prime." (*Gavriiloglou*, *supra*, 83 Cal.App.5th at p. 600.)

Gavriiloglou appealed that judgment; we affirmed the order confirming the arbitrator's award but reversed the order granting the judgment on the pleadings as to the PAGA claims. (*Gavriiloglou*, *supra*, 83 Cal.App.5th at pp. 599, 607.) On January 11,

4

2023, the California Supreme Court denied Prime Health's petition for review. (*Gavriiloglou v. Prime Healthcare Management, Inc.* (Jan. 11, 2023, S277080) ___Cal.5th___ [2023 Cal. LEXIS 112].)

On April 9, 2024, Prime Health filed a renewed motion for judgment on the pleadings, arguing that it was entitled to judgment in its favor on the ground of issue preclusion, due to the issuance of two appellate court decisions from the Second District Court of Appeal which disagreed with *Gavriiloglou*, *supra*, 83 Cal.App.5th 595 and the intervening opinion of the Supreme Court in *Adolph*, *supra*, 14 Cal.5th 1104, which, it argued, confirmed that our prior opinion misapplied the existing principles of law and was wrongly decided. The trial court denied the motion based on the doctrine of law of the case, concluding that the subsequent opinions in *Rocha*, *supra*, 88 Cal.App.5th 65 and *Rodriguez*, *supra*, 106 Cal.App.5th 645 reflected a split of opinion and they were not controlling authority, and that *Adolph* did not disapprove of *Gavriiloglou*.

On December 17, 2024, Prime Health filed the instant petition for writ of mandate, seeking to overturn the trial court's order denying its renewed motion for judgment on the pleadings as erroneous. On March 30, 2025, we issued an order to show cause. Gavriiloglou filed a response in lieu of a return and no traverse has been filed. We granted Setareh Law Group leave to file an amicus brief on behalf of real party in interest.[2]

---

[2] Gavriiloglou incorrectly refers to herself a respondent in this proceeding, but the respondent is the Superior Court. Amicus Curiae states its brief was filed on behalf of respondent, but the points raised therein support the real party in interest, Gavriiloglou,

1. ***Gavriiloglou's PAGA Claims***

    a. *General Principles Relating to PAGA Claims*

In 2003, the Legislature enacted PAGA to remedy "systemic underenforcement" of the Labor Code. (*Williams v. Superior Court* (2017) 3 Cal.5th 531, 545.) At that time, the Legislature declared that adequate financing of labor law enforcement was necessary to achieve maximum compliance with state labor laws, that staffing levels for labor law enforcement agencies had declined and were unlikely to keep pace with the future growth of the labor market, and that it was therefore in the public interest to allow aggrieved employees, acting as private attorneys general, to recover civil penalties for Labor Code violations, with the understanding that labor law enforcement agencies were to retain primacy over private enforcement efforts. (Stats. 2003, ch. 906, § 1; *Arias v. Superior Court* (2009) 46 Cal.4th 969, 980–981 (*Arias*).)

To address enforcement problems of worker protections pre-PAGA, the Legislature adopted a schedule of civil penalties ""significant enough to deter violations""" for those provisions that lacked existing noncriminal sanctions, and deputized employees harmed by labor violations to sue on behalf of the state and collect penalties, to be shared with the state and other affected employees. (*Osuna v. Spectrum Security Services, Inc*. (2025) 111 Cal.App.5th 516, 524, citing *Williams v. Superior*

---

the plaintiff in the underlying action, given that the amicus curiae indicates it is a law firm that regularly represents plaintiffs, and its argument agrees with the position espoused by the real party in interest, Gavriiloglou, requesting that we affirm the holding of *Gavriiloglou*, *supra*, 83 Cal.App.5th 595.

6

*Court* (2017) 3 Cal.5th 531, 545.) Those deputized are referred to as "aggrieved employee[s]." (See § 2699, former subd. (a).)

"A PAGA claim for civil penalties ""'is fundamentally a law enforcement action.'"" [Citation.] 'The "government entity on whose behalf the plaintiff files suit is … the real party in interest.'" [Citation.] PAGA's default civil penalties are thus calculated '"to punish the employer" for wrongdoing' [citation] and '"to deter violations"' [citation] rather than "compensate employees for actual losses incurred." (*Adolph*, *supra*, 14 Cal.5th at p. 1117.) "Because an aggrieved employee's action under [PAGA] functions as a substitute for an action brought by the government itself, a judgment in that action binds all those, including nonparty aggrieved employees, who would be bound by a judgment in an action brought by the government." (*Arias*, *supra*, 46 Cal.4th at p. 986.)

The action must be prosecuted by an aggrieved employee, which the statute defines as follows: "For purposes of this part, "aggrieved employee" means any person who was employed by the alleged violator and personally suffered each of the violations alleged during the period prescribed under Section 340 of the Code of Civil Procedure, except that for purposes of actions brought pursuant to paragraph (2), "aggrieved employee" means any person who was employed by the alleged violator against whom one or more of the alleged violations was committed within the period prescribed under Section 340 of the Code of Civil Procedure." (§ 2699, subd. (c)(1); *Contreras v. Superior Court* (2021) 61 Cal.App.5th 461, 469 (*Contreras*).)

In *Contreras*, the petitioners filed suit under PAGA, alleging the employer misclassified them and others as independent contractors, thereby violating multiple provisions of the Labor Code. The employer "moved to compel arbitration based on agreements petitioners had signed at the beginning of their employment. The trial court granted the motion, ordering into arbitration 'the issue of arbitrability' of petitioners' suit—whether they are 'aggrieved employees' entitled to raise PAGA claims." (*Contreras*, *supra*, 61 Cal.App.5th at pp. 465–467.)

The employees in *Contreras* filed a petition for writ of mandate, and the Second District Court of Appeal, Division Five, granted the writ, holding that, "Under that case law and in light of the very nature of a PAGA claim, a court—not an arbitrator—must decide all aspects of the claim. The only exception is when the state, as real party in interest, has consented to arbitration. The state did not consent here." (*Contreras*, *supra*, 61 Cal.App.5th at p. 468.) The court reasoned that the arbitrability of a portion of a PAGA claim presented a legal question that lies at the intersection of California labor and arbitration law, and rests on a legal determination whether a plaintiff in a PAGA action is an independent contractor or an aggrieved employee. (*Ibid.*, citing *Provost v. YourMechanic, Inc.* (2020) 55 Cal.App.5th 982, 995, review den. Jan. 20, 2020, D076569 ["Here, we apply a de novo standard of review because the denial of arbitration of the 'individual' claim—whether Provost is an independent contractor or an 'aggrieved employee,' with standing under section 2699, subdivisions (a) and (c)—rests on a determination of the law"].)

8

The *Contreras* court, thus concluded that a PAGA plaintiff may not be compelled to arbitrate whether he or she is an aggrieved employee. (*Contreras*, *supra*, 61 Cal.App.5th at p. 477.) Although *Contreras* was decided before the decisions in *Viking River Cruises, Inc. v. Moriana* (2022) 596 U.S. 639 (*Viking*), which we discuss more fully below, and *Adolph* were issued, and although it relied on *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348 (*Iskanian*), which was disapproved in part in *Viking*, it retains validity in cases such as this where the employment agreement does *not* compel arbitration of the PAGA claims—individual or nonindividual. More to the point, the *Contreras* decision it was not mentioned, much less disapproved, by *Adolph*.

As in *Contreras*, *supra*, 61 Cal.App.5th 461 the findings made by the arbitrator against Gavriiloglou on most of the Labor Code violations were grounded on the arbitrator's determination that Gavriiloglou was an exempt employee. There was no finding on the question of whether Gavriiloglou qualifies as an *aggrieved* employee. Like the plaintiffs in *Contreras,* Gavriiloglou was entitled to have all the PAGA claims resolved judicially, including the "gateway" issue of whether Gavriiloglou qualifies as an aggrieved employee under the PAGA statute.

The rationale for this approach still holds for any case in which the employee has not agreed to arbitrate any aspect of his or her potential PAGA claims. "Every PAGA claim is a '"dispute between an employer and the state."' [Citation.] 'A PAGA claim is legally and conceptually different from an employee's own suit for damages and statutory penalties. An employee suing under PAGA "does so as the *proxy or agent of the state's labor law enforcement agencies*."'" (*Contreras*, *supra*, 61 Cal.App.5th at p. 469.)

9

The United States Supreme Court explained the two different ways in which PAGA actions are '"representative,"' indicating that in one sense, PAGA actions are 'representative' because "they are brought by employees acting as representatives—that is, as agents or proxies—of the State." (*Viking, supra*, 596 U.S. at p. 648.) The court stated that in this sense, every PAGA action is representative "because every PAGA claim is asserted in a representative capacity." (*Ibid*.)

In the second sense, the word "representative" is used to distinguish so-called "individual" PAGA claims, which are based on Labor Code violations sustained by the plaintiff, from "representative" PAGA claims, which are based on Labor Code violations involving employees other than the plaintiff. (*Viking*, *supra*, 596 U.S. at p. 648.) The United States Supreme Court thereafter used the term '"individual PAGA claim' to refer to claims based on code violations suffered by the plaintiff." (*Id.* at pp. 648–649; *Galarsa v. Dolgen California, LLC* (2023) 88 Cal.App.5th 639, 647.) Both the individual and nonindividual PAGA claims are brought in a representative capacity, in which the employee acts as "a proxy or agent'" for the Labor and Workforce Development Agency (LWDA). (*Adolph*, *supra*, 14 Cal.5th at pp. 1113, 1116.)

In *Viking*, the United States Supreme Court held that the FAA preempted the rule of *Iskanian*, *supra*, 59 Cal.4th at page 387, insofar as it precluded division of PAGA actions into individual and nonindividual claims through an agreement to arbitrate, such that *Viking* was entitled to compel the employee's individual PAGA claim to arbitration. (*Viking, supra*, 596 U.S. at p. 662.) It further concluded that "PAGA provides no mechanism to enable a court to adjudicate nonindividual PAGA claims once an individual

10

claim has been committed to a separate proceeding. Under PAGA's standing requirement, a plaintiff can maintain non-individual PAGA claims in an action only by virtue of also maintaining an individual claim in that action." (*Id.*, at p. 663, citing § 2699, subds. (a), (c).)

For this reason, the court in *Viking* upheld the validity of that portion of the rule of *Iskanian* regarding the continued validity of the nonindividual claims, ruling that they may not be dismissed simply because they are "representative." (*Viking*, *supra*, 596 U.S. at p. 663.) If the nonindividual claims could be dismissed in that manner, the result would be a prohibition of representative (i.e., nonindividual) claims altogether, which would frustrate the objectives of PAGA and run contrary to public policy and unenforceable as a matter of state law. (*Adolph*, *supra*, 14 Cal.5th at p. 1118, citing *Iskanian*, *supra*, 59 Cal.4th at p. 384 [noting "Viking River also left this rule intact"].)

While the individual PAGA claim may be arbitrated, the issue of whether it is subject to arbitration must be determined by the trial court, which must review the complaint to determine if arbitrable individual claims are alleged. (*Rodriguez v. Packers Sanitation Services LTD, LLC* (2025) 109 Cal.App.5th 69, 80, review granted May 14, 2025, S290182.) In other words, the determination of whether individual claims are subject to arbitration requires a judicial determination, and is not subject to a determination by the arbitrator.

b. *Analysis*

Here, not even the individual PAGA claims were subject to arbitration under the arbitration agreement, and the arbitrator's award does not address any issue, including

11

any gateway issue, relating to the PAGA claims. Because the preliminary or "gateway" issue of the employee's standing as an "aggrieved employee" is an integral part of the representative PAGA claim and because a gateway issue subject to judicial determination, any determination by the arbitrator that employee is not aggrieved would have no binding effect on the court in adjudicating the PAGA claim. It follows that where the arbitrator was not tasked with deciding whether the employee was aggrieved or not, and made no express finding on that issue, the arbitrator's findings are not binding on the judicial determination of the PAGA claims. This is because the employee in the PAGA claims, both individual and nonindividual, was acting in a representative capacity on behalf of the state agency, as we explained in *Gavriiloglou*, *supra*, 83 Cal.App.5th 595.

"The 'government entity on whose behalf the plaintiff files suit is always the real party in interest.'" (*Kim v. Reins International California, Inc*. (2020) 9 Cal.5th 73, 81.) To permit the arbitration of elements or components of the nonindividual PAGA claim, would result in the loss of one of its weapons in the enforcement of California's labor laws. Other cases are in accord. "'Without the state's consent, a predispute agreement between an employee and an employer cannot be the basis for compelling arbitration of a representative PAGA claim because the state is the owner of the claim and the real party in interest, and the state was not a party to the arbitration agreement.'" (*Contreras*, *supra*, 61 Cal.App.5th at p. 474, quoting *Correia v. NB Baker Electric, Inc*. (2019) 32 Cal.App.5th 602, 622 (*Correia*).)

For these reasons, we conclude that individual PAGA claims may be subject to arbitration, but that, under the holding of *Adolph*, the arbitration of those claims does not

12

strip a plaintiff of standing as an aggrieved employee to litigate nonindividual claims on behalf of other employees under PAGA. (*Adolph*, *supra*, 14 Cal.5th at p. 1114.) Additionally, insofar as Prime Health appears to assert that the adverse findings on the Labor Code violations are tantamount to a gateway finding on the viability of the PAGA claims, that is, whether Gavriiloglou was an aggrieved employee for purposes of the pursuing the nonindividual claims, such a premise would render PAGA toothless, and it finds no support in the provisions of PAGA or the existing body of case law requiring a judicial determination on that point.

We now turn to Prime Health's argument that the trial court erred in concluding that our holding in *Gavriiloglou*, *supra*, 83 Cal.App.5th 595 was law of the case as to Gavriiloglou's standing to pursue the PAGA claims following the adverse arbitration award on the alleged Labor Code violations.

2. ***Did the Trial Court Commit Error When It Concluded that the Holding of Gavriiloglou, Was Law of the Case?***

Prime Health argues that extraordinary relief is warranted because the trial court erroneously concluded that our prior holding in *Gavriiloglou*, *supra*, 83 Cal.App.5th 595 was law of the case in denying Prime Health's renewed motion for judgment on the pleadings. Specifically, Prime Health relies on two intermediate appellate decisions from the Second District Court of Appeal, which disagreed with *Gavriiloglou* (*Rocha*, *supra*, 8 Cal.App.5th 65 & *Rodriguez*, *supra*, 106 Cal.App.5th 645), and the subsequent opinion in *Adolph*, *supra*, 14 Cal.5th 1104, which does not mention *Gavriiloglou*, to argue that *Gavriiloglou* has been disapproved, and that the arbitrator's findings on the non-PAGA

13

claims have preclusive effect on Gavriiloglou's ability to pursue the PAGA claims. We disagree.

"""'The doctrine of 'law of the case' deals with the effect of the *first appellate decision* on the subsequent *retrial or appeal*: The decision of an appellate court, stating a rule of law necessary to the decision of the case, conclusively establishes that rule and makes it determinative of the rights of the same parties in any subsequent retrial or appeal in the same case.'"" (*Leider v. Lewis* (2017) 2 Cal.5th 1121, 1127, quoting *Morohoshi v. Pacific Home* (2004) 34 Cal.4th 482, 491 (*Morohoshi*).)

"The doctrine applies only to a decision of an appellate court in the same case. Final decisions or rulings of a trial court in a separate case, or in various independent stages of a proceeding, are governed by the distinct principle of res judicata." (9 Witkin, Cal. Procedure (6th ed. 2023) Appeal, § 481.) The doctrine also applies to the Supreme Court even when the previous appeal was before a Court of Appeal. (*Morohoshi*, *supra*, 34 Cal.4th at p. 491; *Searle v. Allstate Life Ins. Co*. (1985) 38 Cal.3d 425, 434.)

Like res judicata, the doctrine of the law of the case promotes finality of litigation by preventing a party from relitigating questions previously decided by a reviewing court. (*George Arakelian Farms v. Agric. Labor Rels. Bd.* (1989) 49 Cal.3d 1279, 1291.)

a. *Res Judicata, Claim Preclusion, and Issue Preclusion*

Prime Health argues that Gavriiloglou's standing to pursue any PAGA claim is precluded by the adverse findings by the arbitrator on her individual state law claims. We disagree, first because the principles of claim preclusion are inapplicable, and second,

because PAGA requires a judicial determination of the elements of the nonindividual, or representative, claim.

"'[R]es judicata'" is an umbrella term encompassing both claim preclusion and issue preclusion, which has been described as two separate "'aspects'" of an overarching doctrine. (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 823–824 (*DKN Holdings*); *Teitelbaum Furs, Inc. v. Dominion Ins. Co*. (1962) 58 Cal.2d 601, 604 (*Teitelbaum Furs*).) Res judicata precludes parties *or their privies* from relitigating a cause of action that has been finally resolved in a prior proceeding. (*Teitelbaum Furs, supra*, at p. 604, quoting *Bernhard v. Bank of America Nat'l Trust & Sav. Asso*. (1942) 19 Cal.2d 807, 810 (*Bernhard*).)

The doctrine of res judicata also includes the principle of collateral estoppel, under which an issue "'necessarily decided in [prior] litigation [may be] conclusively determined as [against] the parties [thereto] *or their privies* . . . in a subsequent lawsuit on a different cause of action.'" (*Teitelbaum Furs*, *supra*, 58 Cal.2d at p. 604, italics added.)

"*Claim preclusion* 'prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them.' [Citation.] Claim preclusion arises if a second suit involves (1) the same cause of action (2) between the same parties (3) after a final judgment on the merits in the first suit. [Citations.] If claim preclusion is established, it operates to bar relitigation of the claim altogether." (*DKN Holdings*, *supra*, 61 Cal.4th at p. 824.)

"*Issue preclusion* prohibits the relitigation of issues argued and decided in a previous case, even if the second suit raises different causes of action. [Citation.] Under

issue preclusion, the prior judgment conclusively resolves an issue actually litigated and determined in the first action. [Citation.] There is a limit to the reach of issue preclusion, however. In accordance with due process, *it can be asserted only against a party to the first lawsuit, or one in privity with a party*." (*DKN Holdings*, *supra*, 61 Cal.4th at p. 824, italics added, citing *Bernhard*, *supra*, 19 Cal.2d at p. 812.)

Moreover, "[f]or purposes of both issue preclusion and claim preclusion, "'[i]dentity of parties means not only that they must be identical in person, but that the capacity in which they appear must be the same. A judgment for or against a party in one right or capacity cannot affect him when acting in another right or capacity."'" (*Gavriiloglou*, *supra*, 83 Cal.App.5th at p. 603.)

Prime Health's entire argument rests on the notion that the arbitrator's findings on Gavriiloglou's individual Labor Code claims precludes her from bringing a PAGA claim. Yet, the PAGA claim was not submitted for arbitration, which means the "gateway" finding of whether Gavriiloglou is an aggrieved employee, as well as the merits of the claim, have not been judicially resolved as required under PAGA rules. In addition, the state and LWDA did not consent to arbitration, so they were not in privity with Gavriiloglou respecting her individual Labor Code claims, and no part of the nonindividual PAGA claims can be deemed in privity with Gavriiloglou respecting the individual Labor Code violations. Because the specific issue of whether she was an "aggrieved employee" was not submitted for determination by the arbitrator, even if there were privity, there was no ruling to bind the various interests on that point. Under these

16

circumstances, we conclude the findings made by the arbitrator on the individual Labor Code violations are not binding.

These matters were litigated in *Gavriiloglou*, and we held "in the arbitration, Gavriiloglou was litigating her own individual right to damages for Labor Code violations, whereas in the present PAGA action, she is litigating the state's right to statutory penalties for Labor Code violations. It follows that the arbitrator's findings cannot have preclusive effect." (*Gavriiloglou*, *supra*, 83 Cal.App.5th at p. 603.)

Our holding in *Gavriiloglou* was grounded on our reasoning that the PAGA claims (both individual and nonindividual) were not brought by Gavriiloglou in a personal capacity for her own compensation or vindication. As we explained in *Gavriiloglou*, "According to the Restatement Second of Judgments, section 36(2), '[a] party appearing in an action in one capacity, individual or representative, is not thereby bound by or entitled to the benefits of the rules of res judicata in a subsequent action in which he appears in another capacity.' This rule applies to both claim preclusion and issue preclusion. [Citation.] 'With respect to issue preclusion, a party appearing in successive actions … is not precluded where the capacities in which he participated are different.'" (*Gavriiloglou*, *supra*, 83 Cal.App.5th at p. 602.)

In the present matter, Prime Health argues anew that even if the "same capacity" requirement is imposed, the "same right" exception would apply. But this issue was also addressed in *Gavriiloglou,* as we have already discussed above. There we held the "same right" exception did not apply because "'[individual] employees do not own a personal claim for PAGA civil penalties [citation], and whatever personal claims

17

[individual] employees might have for relief are not at stake.'" (*Gavriiloglou*, *supra*, 83 Cal.App.5th at p. 603.) Our previous holding is therefore binding unless and until it is determined that there exists an exception to the law of the case doctrine.

      b.  *Exceptions to Law of the Case; Intervening Change in the Law*

Prime Health argues that the trial court erred in applying the law of the case doctrine because the case falls within an exception to the doctrine. The "law of the case" rule will be disregarded when necessary to avoid an "unjust decision." (*Searle, supra,* 38 Cal.3d at p. 435.) Thus, "a court is not absolutely precluded by the law of the case from reconsidering questions decided upon a former appeal. Procedure and not jurisdiction is involved. Where there are exceptional circumstances, a court which is looking to a just determination of the rights of the parties to the litigation and not merely to rules of practice, may and should decide the case without regard to what has gone before." (*England v. Hospital of Good Samar*itan (1939) 14 Cal.2d 791, 795.)

For this reason, courts "have declined to adhere to [the law of the case doctrine] where its application would result in an unjust decision, e.g., where there has been a manifest misapplication of existing principles resulting in substantial injustice, or where the controlling rules of law have been altered or clarified by a decision intervening between the first and second appellate determinations. The unjust decision exception does not apply when there is a mere disagreement with the prior appellate determination." (*Morohoshi*, *supra*, 34 Cal.4th at pp. 491–492.)

Therefore, exceptions to the doctrine may apply "when (1) there has been an intervening change in the law, or (2) the disputed issue was not presented or considered in

18

the proceedings below, or (3) application of the doctrine would result in a manifest injustice." (*George Arakelian Farms v. Agric. Labor Rels. Bd.* (1989) 49 Cal.3d 1279, 1291, citing *Di Genova v. State Board of Education* (1962) 57 Cal.2d 167, 179–180.)

The law of the case doctrine also applies "where the point of law involved was necessary to the prior decision and was "'actually presented and determined by the court.'"" (*People v. Gray* (2005) 37 Cal.4th 168, 197.) The "doctrine will not be adhered to where its application will result in an unjust decision, e.g., where there has been a 'manifest misapplication of existing principles resulting in substantial injustice' [citation], or the controlling rules of law have been altered or clarified by a decision intervening between the first and second appellate determinations [citation]. The unjust decision exception does not apply when there is a mere disagreement with the prior appellate determination." (*People v. Stanley* (1995) 10 Cal.4th 764, 787 (*Stanley*).)

In other words, more must be shown than that a court on a subsequent appeal disagrees with a prior appellate determination. (*Stanley, supra,* 10 Cal.4th at p. 787, citing *People v. Shuey* (1975) 13 Cal.3d 835, 846.)

Here, Prime Health argues that there has been an intervening change in the law to avoid the application of the law of the case doctrine. It also argues that our prior holding in *Gavriiloglou*, *supra*, 83 Cal.App.5th 595 is a misapplication of the law and that the trial court erred in ruling that it was bound by the decision. We disagree.

The intervening change in the law exception does not apply here. First, the decisions in *Rocha*, *supra*, 88 Cal.App.5th 65 and *Rodriguez*, *supra*, 106 Cal.app.5th 645 are not controlling authorities on the issue presented here under stare decisis. (*Auto*

19

*Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 456 (*Auto Equity*).) "Under the doctrine of *stare decisis*, all tribunals exercising inferior jurisdiction are required to follow decisions of courts exercising superior jurisdiction." (*Id.*, at p. 455.) But the decisions in *Rocha* and *Rodriguez* were issued by intermediate appellate courts, not by a court exercising jurisdiction superior to our own; they are lateral or horizontal authorities that simply disagree with *Gavriiloglou*, reflecting a potential split of authority.

"[B]ecause there is no 'horizontal stare decisis' within the Court of Appeal, intermediate appellate court precedent that might otherwise be binding on a trial court (see *Auto Equity*, *supra*, 57 Cal.2d at p. 455) is not absolutely binding on a different panel of the appellate court. (*In re Marriage of Shaban* (2001) 88 Cal.App.4th 398, 409.)

The absence of horizontal stare decisis means that the decisions of *Rocha* and *Rodriguez* from the Second District Court of Appeal, represent at most a split of opinion, do not justify a determination that the law of the case should not apply due to an intervening change in the law. (*Morohoshi*, *supra*, 34 Cal.4th at pp. 491–492.) However, in our view the two holdings are distinguishable from this case in a manner that precludes application of the holdings of those cases to the facts before us.

In *Rocha,* the plaintiff brothers' complaint did not include any PAGA cause of action. The plaintiffs moved to amend their complaint to add a PAGA claim while the employers' motion to compel arbitration was pending, but that motion was denied because the plaintiffs had not alleged facts giving them standing to seek PAGA relief, as they were not suing on behalf of other former or current employees. (*Rocha*, *supra*, 88 Cal.App.5th at pp. 73–74.) The matter was thereafter ordered to arbitration, where the

20

arbitrator found in favor the employers on all counts.  (*Id.*, at p. 74.)  The plaintiffs then filed a motion to vacate the arbitrator's award, but that motion was denied and, instead, the court granted the employers' motions for sanctions and to confirm the award, leading to the plaintiffs' appeal.  (*Id.*, at p. 75.)

On appeal, the issues presented for decision were limited to the denial of their motion to file the proposed amended complaint (to add the PAGA claim), and the order granting the employers' motions to compel arbitration.  (*Rocha*, *supra*, 85 Cal.App.5th at p. 75.)  There, disagreeing with our decision, Division One of the Second District Court of Appeal held that the plaintiffs could not establish PAGA standing to bring a claim based on Labor Code violations by U-Haul already alleged in the operative complaint, "because the arbitrator's finding that the brothers did not suffer a section 1102.5 violation as alleged in the operative complaint precluded them from qualifying as 'aggrieved employees' based on that same alleged violation.  (*Rocha*, at p. 76.)  It went on to state, "Once the Labor Code violations based on which a plaintiff seeks to qualify for PAGA standing have been finally adjudicated, the extent to which that adjudication prevents a plaintiff from qualifying for standing will depend on general principles of issue preclusion."  (*Id.*, at pp. 77–78.)  Because there was no pending PAGA claim, *Rocha* does not support Prime Health's claim that our prior decision is not law of the case.

In *Rodriguez*, where the employee's non-PAGA claims were submitted for arbitration while the PAGA claims were stayed, the reviewing court concluded that the arbitrator's findings on the individual non-PAGA claims precluded the employee from litigating the PAGA claims.  The reviewing court held the employee could no longer

21

establish standing as an "aggrieved employee," adopting the approach taken by the *Rocha* court, which had disagreed with our holding in *Gavriiloglou*. (*Rodriguez*, *supra*,106 Cal.App.5th at pp. 654, 656–657.) It did not address any authorities on the subject of whether an arbitrator has authority to determine if an employee is an aggrieved employee, or whether PAGA's definition of aggrieved employee properly includes all employees whose Labor Code claims are resolved unfavorably.

However, in *Rodriguez*, the employee had agreed to arbitrate the individual PAGA claim, which did not occur here. Prime Health's analyses ignore the fact that the arbitrator found against Gavriiloglou on her individual Labor Code violations because it agreed she was an exempt employee. But that determination is not tantamount to a finding that the plaintiff is not an aggrieved employee within the meaning of the PAGA statute. Nor could it be, where, as we have discussed, that gateway issue is a nondelegable issue for the court to decide. (*Contreras*, *supra*, 61 Cal.App.5th at p. 477.)

"'When the words are susceptible to more than one reasonable interpretation, we consider a variety of extrinsic aids, including the statutory context and the circumstances of the statute's enactment, in determining legislative intent.' [Citation.] We read the statute as a whole in order to harmonize and give effect to all parts." (*Zalkind v. Ceradyne, Inc.* (2011) 194 Cal.App.4th 1010, 1035.) We assume the Legislature is aware of the various types of employees covered by the Labor Code, and, if it had intended to limit PAGA to a specific type of employee, it knows how to do so. (See *Zalkind*, *supra*, at p. 1035 ["When the Legislature intends the word 'complaint' to include 'cross-complaint,' it says so"].)

22

"The term 'employee' is often statute-specific" (*Brown v. City of Inglewood* (2025) 18 Cal.5th 33, 42), and section 2699 includes its own definition of "aggrieved employee" (§ 2699, subd. (c)), which does not require a "non-exempt employee" to raise the claim. If the Legislature had intended to incorporate by reference the definitions of "employee" found in other parts of the Labor Code, or if it intended to limit standing to non-exempt employees, or to employees who are successful in arbitration of their individual Labor Code violations, it could have said so. It did not.

Thus, while the arbitrator may have found Gavriiloglou to be an exempt employee within the meaning of section 515, for purposes of rejecting her individual Labor Code claims in arbitration, it is not a foregone conclusion that such a finding is preclusive respecting the PAGA claims. This is particularly true considering the representative nature of all PAGA claims, and the policy of permitting representative claims to proceed judicially even in cases where the employee's individual claims are subject to arbitration. The inclusion in section 2699 of its own definition of "aggrieved employee," which does not incorporate by reference any other statutes governing exempt or nonexempt employees under other portions of the Labor Code, undermines the authorities holding that adverse findings in arbitration are entitled to preclusive effect.

The disagreement with our decision expressed by the courts in *Rocha* and *Rodriguez* are inapposite. Further, if we were to follow those decisions, PAGA standing can be undermined by an arbitrator even when no PAGA claim has been submitted for arbitration, and nonindividual PAGA claims could elude judicial determination, contrary to public policy in any case where individual claims—PAGA or otherwise—are referred

23

for arbitration. (*Contreras*, *supra*, 61 Cal.App.5th at p. 474.) "By virtue of an arbitration to which it did not consent, the state will have lost one of its weapons in the enforcement of California's labor laws." (*Ibid.*) "'Without the state's consent, a predispute agreement between an employee and an employer cannot be the basis for compelling arbitration of a representative PAGA claim because the state is the owner of the claim and the real party in interest, and the state was not a party to the arbitration agreement." (*Correia*, *supra*, 32 Cal.App.5th at p. 622.)

There is nothing in the PAGA statutes that permits an arbitrator of alleged Labor Code violations to decide the gateway determination of standing to pursue a PAGA claim that was not submitted for arbitration. Its analysis does not recognize that insofar as standing is a gateway issue to be decided by the court to preserve judicial determination of the nonindividual claims litigation in a plaintiff's representative capacity.

In any event, because one district court of appeal is not inferior to another, we are not bound by the two decisions.

Finally, Prime Health argues that because the Supreme Court cited *Rocha*, *supra*, 88 Cal.App.5th 65 with approval in *Adolph*, *supra*, 14 Cal.5th 1104 the validity of our holding in *Gavriiloglou*, *supra*, 83 Cal.App.5th 595 has been disapproved or overruled; it also asserts that our decision conflicts with *Adolph*. It is mistaken.

First, because our prior opinion in *Gavriiloglou,* was not even mentioned in *Adolph*, it is a misstatement to say that the decision in *Adolph* abrogated or disapproved or nullified in any way our opinion. The Supreme Court was aware of our decision and

24

denied review, so it was aware of the case when it decided *Adolph*, and it did not take the opportunity to express any disagreement with our opinion.

Moreover, the *Adolph* case addressed a situation that arose in the context of an arbitration agreement in which the parties agreed that individual PAGA claims could be submitted for arbitration, and it did so after the United States Supreme Court had ruled that the holding of *Iskanian*, *supra*, 59 Cal.4th 348 was preempted as it pertained to compelling arbitration of individual PAGA claims. (*Adolph*, *supra*, 14 Cal.5th at pp. 1117–1118.) While the issue percolated its way to the California Supreme Court, the United States Supreme Court issued its holding in *Viking*, requiring enforcement of arbitration agreements to determine individual PAGA claims, while leaving intact that portion of the *Iskanian* holding that representative or nonindividual PAGA claims could not be dismissed just because they were representative. (*Viking*, *supra*, 596 U.S. at pp. 662–663.)

Prime Health's argument ignores a major distinguishing feature that undermines its claim that the Supreme Court holding in *Adolph* is an intervening change in the law affecting the validity of *Gavriiloglou*: the case before the Supreme Court involved an arbitration agreement that included a complete waiver of PAGA claims, which the Supreme Court held was enforceable only with respect to the individual PAGA claims, leaving the nonindividual or representative PAGA claims untouched. If it had intended to allow arbitration of the individual PAGA claims to have preclusive effect on the surviving representative claims, we doubt it would have endorsed such a procedure, which renders litigation of the representative claims superfluous.

25

In the present case there was no arbitration agreement to submit any PAGA claims for arbitration (individual or nonindividual). Nothing in the *Adolph*, *supra*, 14 Cal.5th 1104, decision abrogates or calls into question, or even mentions our holding in *Gavriiloglou*, *supra*, 83 Cal.App.5th 595, so it is a misstatement to say that our opinion was affected by *Adolph*. Given the absence of authority for an "implied reversal" or "implied disapproval," we decline the invitation to hold that *Adolph* constitutes an intervening change in the law as an exception to the law of the case doctrine, where the holding was based on significant factual and procedural differences.

The arbitrator's findings here were not preclusive as to the PAGA cause of action because neither the individual nor the nonindividual PAGA claims were submitted to arbitration. The arbitrator's findings were not preclusive on whether Gavriiloglou has standing as an aggrieved employee because the arbitration award contains no such findings. Therefore, the arbitrator's determination on the individual Labor Code violations does not have preclusive effect on this case, and our decision in *Gavriiloglou*, *supra*, 83 Cal.App.5th 595 stands, binding the trial court.

The law of the case doctrine was correctly applied by the trial court because it was not invalidated by an intervening change in the law.

3. ***Whether Petitioner has Established Irreparable Harm***

Gavriiloglou argues in her response to the petition for writ of mandate that Prime Health has failed to demonstrate irreparable harm. We agree. We also find that the petition does not demonstrate that there is no adequate remedy at law.

26

A writ of mandate or mandamus must be issued in all cases where there is not a plain, speedy, and adequate remedy, in the ordinary course of law. (Code Civ. Proc., § 1086.) "Although the statute does not expressly forbid the issuance of the writ if another adequate remedy exists, it has long been established as a general rule that the writ will not be issued if another such remedy was available to the petitioner." (*Flores v. Department of Corrections & Rehabilitation* (2014) 224 Cal.App.4th 199, 205.) "A writ of mandate must not be issued where the petitioner's rights are otherwise adequately protected." (*Agosto v. Board of Trustees of Grossmont-Cuyamaca Community College Dist.* (2010) 189 Cal.App.4th 330, 336.)

In the present case, an action at law is currently pending in the superior court involving the same issue: that is, whether Gavriiloglou is an aggrieved employee under the PAGA law. As we have noted herein above that very issue is one which must be decided as a gateway issue by means of a judicial finding. Therefore, there is an adequate remedy at law.

Gavriiloglou also argues that Prime Health has not demonstrated irreparable harm. Courts rarely grant extraordinary relief at the pleading stage of a lawsuit, but "mandamus will lie when it appears that the trial court has deprived a party of an opportunity to plead his cause of action or defense, and when extraordinary relief may prevent a needless and expensive trial and reversal." (*Taylor v. Superior Court of Los Angeles County* (1979) 24 Cal.3d 890, 894.)

Here, however, Prime Health's petition does not include an allegation that it will suffer irreparable harm or injury if denied extraordinary relief, although it does allege that

it "'would be compelled to go through a trial and appeal from a final judgment' unless the writ issues." Nevertheless, "[a] trial does not generally meet the definition of 'irreparable injury,' being at most an irreparable inconvenience." (*Ordway v. Superior Court* (1988) 198 Cal.App.3d 98, 101, fn. 1.) Given that Prime Health's main objection is that Gavriiloglou lacks standing as an "aggrieved employee," and given that her standing is a gateway determination that must be made by the trial court, Prime Health has not established a basis for extraordinary relief in mandate.

### DISPOSITION

The petition for writ of mandate is denied. The order to show cause and the stay is discharged with the finality of this opinion. Gavriiloglou shall recover her costs in this writ proceeding. (Cal. Rules of Court, rule 8.493(a)(1)(A).)

CERTIFIED FOR PUBLICATION

RAMIREZ
                    P. J.

We concur:

MILLER
                    J.
FIELDS
                    J.

28